# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| 33 PECK SLIP ACQUISITION LLC, | Case No. 15-12479 |
| Debtor, | (Joint Administration Pending) |
| In re: | Chapter 11 |
| 52 WEST 13TH P, LLC, | Case No. 15-12482 |
| Debtor, | |
| In re: | Chapter 11 |
| GEMINI 37 WEST 24TH STREET MT, LLC, | Case No. 12-12481 |
| Debtor, | |
| In re: | Chapter 11 |
| 36 WEST 38TH STREET, LLC, | Case No. 15-12480 |
| Debtor, | |

## DECLARATION OF CHRISTOPHER LA MACK
## PURSUANT TO RULE 1007-2 OF THE LOCAL BANKRUPTCY RULES FOR THE
## SOUTHERN DISTRICT OF NEW YORK IN SUPPORT OF DEBTORS'
## EMERGENCY AND OTHER 'FIRST-DAY' MOTIONS

I, Christopher La Mack, declare as follows:

1.      I am a member and the Vice President of both Gemini Real Estate

Advisors, LLC ("GREA"), a Delaware limited liability company and Gemini Equity

Partners, LLC ("GEP"), a Delaware limited liability company. GREA and GEP control the voting securities of each of the four affiliated debtors and debtors in possession set forth in the caption above:  33 Peck Slip Acquisition LLC ("Best Western Seaport Hotel"); Gemini 37 West 24th Street MT, LLC ("Wyndham Flatiron Hotel"); 36 West 38th Street LLC ("Bryant Park Development Site"); and 52 West 13th P, LLC ("Jade Greenwich Village Hotel") (collectively, the "Debtors") and they oversee the entity that serves as the day-to-day business manager of the Debtors' operations.

2.      I am authorized to submit and I make this declaration ("Declaration") on behalf of the Debtors pursuant to Rule 1007-2 of the Local Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in support of the voluntary petitions (the "Bankruptcy Petitions") filed by each of the Debtors under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (the "Chapter 11 Cases") and in support of each of the emergency motions, motions, applications and requests for relief filed concurrently herewith (collectively, the "First Day Pleadings").

3.      Except as otherwise noted herein, I have personal knowledge of the facts presented in this Declaration, or have reviewed the Debtors' books, records and information referred to herein that were prepared and maintained by the advisors and employees engaged by GREA and GEP or the Debtors at my direction.

4.      I have reviewed the First Day Pleadings and reviewed the relief requested therein and I believe that the relief requested is necessary to minimize the effects on the

Debtors' business operations of the filing of the Bankruptcy Petitions and to preserve and maximize the value of the Debtors' estates.

## I.     GENERAL BACKGROUND

5.      On September 3, 2015, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Concurrently herewith, the Debtors have filed a motion seeking to have their cases jointly administered. I am informed that the Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### A.     The Debtors' Structure

6.      Best Western Seaport Hotel is a Delaware limited liability company that owns and operates a hotel at 33 Peck Slip in the South Street Seaport Historic District on the Lower Manhattan waterfront in New York City, New York. The sole member and manager of the Debtor is 33 Peck Slip Holding LLC, a Delaware limited liability company, the manager for which is 33 Peck Slip Manager LLC, a Delaware limited liability company, the sole member and manager of which is Gemini Equity Partners, LLC, a Delaware limited liability company, whose members are Dante A. Massaro ("Massaro"), Christopher La Mack ("La Mack") and William T. Obeid ("Obeid").

7.      Wyndham Flatiron Hotel is a Delaware limited liability company that owns and operates a hotel at 37 West 24th Street in the Flatiron district of New York City, NY. The sole member and manager of Wyndham Flatiron Hotel is Gemini NYC Hotel LLC, a Delaware limited liability company, the manager for which is Gemini Real

Estate Advisors, LLC, a Delaware limited liability company, whose members are

Massaro, La Mack and Obeid.

8.      Bryant Park Development Site is a Delaware limited liability company

that owns a development lot that is approved for development as a 114-room boutique

hotel at 34-36 West 38th Street in the Bryant Park district of New York City, New York.

The sole member and manager of Bryant Park Development Site is 36 West 38th Street

Holding LLC, a Delaware limited liability company, the manager for which is 36 West

38th Street Manager, LLC, a Delaware limited liability company, the sole member and

manager of which is Gemini Equity Partners, LLC, a Delaware limited liability

company, whose members are Massaro, La Mack and Obeid.

9.      Jade Greenwich Village Hotel is a Delaware limited liability company that

owns and operates a hotel at 52 West 13th Street in Greenwich Village in Lower

Manhattan in New York City, New York. The sole member of Jade Greenwich Village

Hotel is 52 West 13th Street Holding LLC, a Delaware limited liability company the

majority stakeholder of which is member and manager Gemini NY Hospitality Fund

LLC, a Delaware limited liability company, the manager of which is Gemini Real Estate

Advisors, LLC, a Delaware limited liability company, whose members are Massaro, La

Mack and Obeid.

B.      **The Debtors' Business Assets**

1.      **Best Western Seaport Hotel**

10.      The Hotel's[1] large guest rooms and 6,000 square foot footprint, its pristine historic structure, and its excellent location in the heart of the South Street Seaport Historic District provide a significant redevelopment opportunity to turn the Hotel into one of Lower Manhattan's premier boutique hotels. While the Hotel is currently branded as a Best Western unit, the Hotel was marketed as unencumbered of both brand and management with significant redevelopment potential.

11.      The Hotel currently features 72 oversized guestrooms, including two executive floors and 10 suites with large terraces and stunning views of the Brooklyn Bridge and the Financial District. The ground floor, which includes nearly 3,000 square feet of usable space and extensive street frontage on both Peck Slip and Front Street, has the potential to be redeveloped into a unique lobby and bar/restaurant concept.

12.      During 2012, 2013, 2014 and through June 30, 2015, the financial results of the Hotel were as follows:

|  | 2012 | 2013 | 2014 | 2015 (to June 30) |
|---|---|---|---|---|
| Avg. Occupancy | 78.2% | 75.0% | %85.0 | 81.7% |
| Gross Revenue | $3,795,000 | $4,168,000 | $3,824,673.00 | $1,750,662.00 |
| Allocated Dep't Expenses | $1,006,000 | $1,057,000 | 4961,009.00 | $608,605.00 |
| Unallocated Expenses | $843,000 | $807,000 | $637,378.00 | $396,523.88 |

---

[1] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the referenced motion or other document.

| Management Fees | $114,000 | $125,000 | $152,987.00 | $69,988.07 |
| Insurance and Taxes | $605,000 | $483,000 | $411,878.00 | $276,473.10 |
| FF&E Reserve | $152,000 | $167,000 | - | - |
| Net Operating Income | $1,075,000 | $1,529,000 | $1,661,421.00 | $399,071.95 |

## 2.    The Wyndham Flatiron Hotel

13.     The Hotel's green guest rooms and 3,027 square foot footprint, its pristine contemporary architecture, and its excellent location nestled in Manhattan's Chelsea neighborhood bordering the West Village, Midtown, Flatiron District and Union Square, provide a significant redevelopment opportunity to turn the Hotel into one of Lower Manhattan's premier boutique hotels.  The Hotel is currently branded as a Wyndham Garden Hotel.

14.     The Hotel currently features 124 hotel rooms and two one-bedroom suites with eight rooms per floor and stunning views of the Brooklyn Bridge and the Financial District. The ground floor, which includes nearly 3,027 square feet of usable space and extensive street frontage on West 24th Street, has the potential to be redeveloped into a unique lobby and bar/restaurant concept.

15.     During 2012, 2013, 2014 and through June 30, 2015, the financial results of the Hotel were as follows:

|  | 2012 | 2013 | 2014 | 2015 (to June 30) |
|---|---|---|---|---|
| Avg. Occupancy | 91.5% | 92.8% | 93.6% | 96.7% |
| Gross Revenue | $8,853,888.00 | $9,242,910.00 | $9,567,401.00 | $4,209,247.93 |

| Allocated Dep't Expenses | $1,688,578.00 | $1,907,523.00 | $1,925,924.00 | $878,217.22 |
| Unallocated Expenses | $1,892,871.00 | $1,950,662.00 | $2,104,480.00 | $1,044,954.78 |
| Management Fees | $353,712.00 | $369,734.00 | $382,753.00 | $167,871.83 |
| Insurance and Taxes | $789,297.00 | $803,507.00 | $916,759.00 | $451,059.86 |
| FF&E Reserve | $267,197.00 | $333,624.00 | $382,753.00 | $167,871.83 |
| Net Operating Income | $3,862,233.00 | $3,877,860.00 | $3,854,732.00 | $1,499,272.41 |

### 3.    The Jade Greenwich Village Hotel

16.    The Hotel's Prohibition-era design theme seamlessly integrates with the surrounding neighborhood and offers guests a rare opportunity to experience a local Greenwich Village lifestyle in a world-class boutique hotel.

17.    The Hotel currently features 113 guestrooms, Art Deco-style public spaces and a lobby-level bar and restaurant concept. The Jade Greenwich Village Hotel opened in February, 2013 on a highly-desirable block with one of the neighborhood's most impressive facades. The hotel is located within close proximity to Union Square, Chelsea, the Meatpacking District, Times Square, the Broadway Theater District, the Financial District and virtually all well-known Manhattan landmarks.

18.    During 2013, 2014 and to June 30, 2015, the financial results of the Hotel were as follows:

| | 2013 | 2014 | 2015 (to June 30) |
| --- | --- | --- | --- |
| Avg. Occupancy | 81% | 91.8% | 90.7% |

| Gross Revenue | $11,164,929.00 | $14,133,377.00 | $6,413,349.48 |
|---|---|---|---|
| Allocated Dep't Expenses | $4,432,893.00 | $5,140,789.00 | $2,475,135.88 |
| Unallocated Expenses | $1,896,459.00 | $2,473,610.00 | $1,224,047.91 |
| Management Fees | $389,677.00 | $547,961.00 | $267,528.92 |
| Insurance and Taxes | $345,126.00 | $943,265.00 | $684,307.19 |
| FF&E Reserve | $141,715.00 | $345,964.00 | $267,528.92 |
| Net Operating Income | $3,959,059 | $4,681,788.00 | $1,494,800.66 |

### 4.    The Bryant Park Development Site

19.    The Bryant Park Development Site is a 4,345 square-foot land parcel located on West 38th Street between Fifth and Sixth Avenues. The Site will be sold as a "shovel-ready" vacant lot. Developers are offered the option to either adopt existing design plans and permits for an exclusive 114-key boutique hotel concept or design their own project.

20.    Located on West 38th Street between Fifth and Sixth Avenues, the Site is situated on "Boutique Row" in Midtown Manhattan, the largest central business district in the United States and home to some of New York's most visited attractions. New York's most recognized skyscrapers lie within Midtown Manhattan's borders, including the Empire State Building, the Chrysler Building, and the United Nations Headquarters. The Hotel is also steps away from New York's most popular demand generators including Bryant Park, Grand Central Station, Times Square, Rockefeller Center, 5th Avenue Shopping, Penn Station and Madison Square Garden.

C.     **Management of the Debtors' Businesses**

21.     The Debtors' hotels and the Bryant Park Development are managed under contract with Gemini Property Management, LLC a Delaware limited liability company which sub-contracted the management of the Wyndham Flatiron Hotel and the Jade Greenwich Village Hotel to Bridgeton Hotel Management, LLC (the "Hotel Manager") pursuant to contract(s) dated as of January 26, 2015 (the "Hotel Management Contract"). The Hotel Manager is also assisting with the management of the Best Western Seaport Hotel.

22.     Pursuant to the Hotel Management Contract, the Hotel Manager's responsibilities include:

    a.     Supervision and management of all marketing, inventory and supplies;

    b.     Operate the Hotel in accordance with the Operating Standard;

    c.     Establish all pricing and discount policies;

    d.     Manage Capital Improvements and Budget;

    e.     Make all payments and collect all receivables related to the Operation of the Hotel;

    f.     Prepare and provide reports on the Hotel's financial performance, sales and marketing efforts;

    g.     Recruit, relocate, pay, supervise, and discharge all Hotel Personnel on behalf of Owner;

h.      Determine all Hotel Personnel policies of employment, selection,

training, compensation, bonuses, employee benefits, discipline, discharge, and

replacement;

i.      Maintain all books and records relating to the Hotel's Operation;

j.      Institute, legal actions or proceedings to collect charges, rent, or other

income derived from the Hotel's Operations or to oust or dispossess guests,

tenants, or other persons in possession therefrom, or to cancel or terminate any

lease, license, or concession agreement for the breach thereof or default

thereunder by the tenant, licensee, or concessionaire;

k.      Engage such professionals as Manager deems reasonably appropriate

for the Operation of the Hotel, including the engagement of appropriate

attorneys to pursue or defend against claims arising out of the Hotel's

Operations;

l.      Apply for, obtain and maintain all licenses and permits required in

connection with the Operation of the Hotel and the facilities;

m.      Collect on behalf of Owner and account for and remit to

governmental authorities all applicable excise, sales, and use taxes or similar

governmental charges collected by the Hotel directly from patrons or guests, or

as part of the sales price of any goods, services, or displays, such as gross

receipts, admission, or similar or equivalent taxes; and

   n. Oversee the parking operations at the Hotel, and, if such parking operations are managed by a third party operator, exercise Owner's supervisory rights held by Owner under the agreement with such operator.

23. The Hotel Manager's key personnel are: Bill Stelma (Managing Director – Chief Accounting Officer); Dante A. Massaro (President & CEO); Christopher La Mack (Vice President).

  **D.** **Events Precipitating the Chapter 11 Filings**

24. In or about April 2003, Massaro, La Mack and Obeid formed GREA to invest in commercial real estate projects.

25. The Debtors were established to facilitate investment in hotel properties through a group of corporate groups that are, in whole or in part, managed by Gemini Real Estate Advisors, LLC and/or Gemini Equity Partners, LLC, both Delaware limited liability companies that are owned in equal parts by Massaro, La Mack and Obeid.

26. In 2014, disputes arose between Massaro, La Mack and Obeid related to Obeid's management of the business affairs of GREA. On July 1, 2014, at a meeting of the members of GREA, La Mack and Massaro voted to remove Obeid as the President of GREA. Thereafter, La Mack and Massaro filed litigation against Obeid in the North Carolina State Court, Mecklenburg County (Case No. 14-CVS-12010) (the "North Carolina Action"), seeking damages for breach of fiduciary duties to GREA and seeking injunctive relief to prevent Obeid's continued interference with GREA's business.

27.    After the North Carolina Action was filed, Obeid continued to interfere with GREA's business operations through, among other things, communications with GREA's employees, lenders and business relationships.

28.    On August 14, 2014, Obeid filed a retaliatory lawsuit against La Mack and Massaro in federal court in New York in a further attempt to disrupt GREA's business (the "New York Action"). Thereafter, Obeid sought a TRO (which has been denied) to halt the sale and liquidation of certain of GREA's subsidiary's holdings.

29.    In connection with the New York Action, Obeid filed notices of *Lis Pendens* in the chain of title for all four Debtors (collectively, the "*Lis Pendens*").

30.    The dispute among Obeid, La Mack and Massaro has not significantly affected the day-to-day operation of the Debtors' hotels, which are independently operated under contracts with the Hotel Manager. However, the *Lis Pendens* and the ongoing lawsuits have made it impossible to meet the closing conditions and deliver free and clear title to any of the proposed purchasers for the Hotels.

31.    Massaro and La Mack are concerned that the value of the Hotels and a transaction could continue to deteriorate if the transactions are put on hold until the litigation can be concluded. The Bryant Park Development Site is especially susceptible to continued delay in liquidation because it has no operating revenues. All attempts to reasonably settle the litigation have been unsuccessful.

32.    Accordingly, the Debtors are liquidating their assets through these Bankruptcy Cases to protect the interests of creditors and stakeholders by maximizing the value that can be achieved through a sale.

33.    Concurrently with the filing of the Debtors' Chapter 11 Cases, the Debtors filed a motion seeking to set procedures for confirming a proposed chapter 11 plan of reorganization (the "Plan") and will immediately thereafter file motions to set procedures to conduct auctions in connection with the Plan that will permit the Debtors to sell their assets free and clear of liens, claims, encumbrances and interests (the "Sale Procedures Motions").

34.    The Debtors expect to consummate sales through the chapter 11 process, confirm a Plan of o and distribute proceeds to creditors and interest holders as expeditiously as possible.

35.    The Debtors will file applications seeking to retain Robins Kaplan LLP ("RK") as its counsel and RobertDouglas as a Real Estate Advisor (the "Real Estate Advisor") to assist with the sales.

## II.    RELEVANT BACKGROUND INFORMATION RELATED TO SPECIFIC MOTIONS FOR RELIEF

### A.    JOINT ADMINISTRATION

36.    I, Obeid and Massaro each own 33.3% of the membership interests of both GREA and GEP, which entities may act by majority vote of the members. La Mack, Obeid and Massaro, through GREA and GEP, indirectly control the voting securities of each of the Debtors.

37.    While the Debtors will continue to operate as separate and distinct entities during the pendency of the Chapter 11 Cases, the Debtors share many common

creditors and business relationships, such as contractual relationships, with third parties.

38.     I am not seeking any action that would constitute substantive consolidation of their Estates, but rather seek entry of an order directing joint administration of their Chapter 11 Cases for procedural purposes only. I believe that entry of an order directing joint administration of the Chapter 11 Cases substantially will reduce the administrative costs of the Chapter 11 Cases, ease the administrative burden on the Court and the parties, simplify the United States Trustee for the Southern District of New York's (the "U.S. Trustee") supervision of the administrative aspects of these cases and have no adverse effect on creditors because it requests only administrative, and not substantive, consolidation of the Estates. Accordingly, I believe joint administration is in the best interest of the Estates.

## B.     EMPLOYEE PRIORITY WAGES

### 1.     Best Western Seaport Hotel

39.     The Debtor employs approximately 20 employees (the "**Employees**"), of whom approximately 18 are full-time salaried Employees and approximately 2 are part-time Employees.  The Employees perform a variety of critical functions, including managing the operations of the Debtor's facilities, maintenance, housekeeping, reception, and food service, as well as performing many administrative, accounting, supervisory, audit, consultant, management and other tasks. The Employees' skills, knowledge and understanding of the Debtor's infrastructure, operations and client

relations are essential to maintaining the value of the Debtor's assets and business

pending a sale transaction.

40.     Employees are paid every Friday, covering wages earned the prior week

(Monday through Sunday). For instance, the wages paid on August 28, 2015 covered

the period Monday, August 17, 2015 through Sunday, August 23, 2015.  The Debtor's

next scheduled payroll is September 11th, covering Monday, August 31, 2015 through

Sunday, September 6, 2105.

41.     For the first 7 months of 2015, the Debtor's average aggregate monthly

payroll was approximately $49,398.05, and average aggregate monthly payroll tax was

approximately $13,900 ("Employee Wages"). The Debtor pays quarterly performance

bonuses to the Manager of the Hotel equal to up to ten percent of the Manager's

quarterly salary if certain profitability, productivity and other benchmarks are

achieved. The Debtor also reimburses eligible employees for certain out-of-pocket

business expenses incurred in the ordinary course of business, such as minor travel,

meals, entertainment, marketing and other business expenses.

42.     In the ordinary course of business, and as is customary with most

companies, the Debtor offers a benefits package to some or all of its employees (the

"Employee Benefits"), including (1) policies for vacation and sick pay, (2) workers'

compensation benefits, (3) New York disability coverage insurance, (4) Union

Negotiated Health Benefits for all "line employees" (all employees other than one

manager and two department heads), and (5) health care and dental insurance for

which the Debtor pays 50% and 25% of the premiums, respectively for a manager and

an executive. The Debtor maintains a workers' compensation and employers' liability insurance policy with Travelers Indemnity Company ("Workers' Compensation Policy"). The Debtor maintains a disability coverage insurance policy with The Hartford Insurance Company ("Disability Coverage Policy"). The combined monthly cost of the Employee Benefits to the Debtor is approximately $9,900 per month.

43.    As of the Petition Date, the Debtor owes approximately $34,767.12 in unpaid Employee Wages and Employee Benefits, including approximately $6,914.67 in wages, $885.08 in employer payroll taxes and workers' compensation costs and $26,082.29 in accrued vacation and sick days. As of the Petition Date, no single non-insider Employee is owed Employee Wages and Employee Benefits in an amount in excess of $12,475.

44.    To minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as expected, and to maintain morale and preserve its essential workforce during this critical time, the Debtor seeks authority, in its discretion, to pay and honor certain prepetition claims for the Employee Wages and Employee Benefits, and to pay all fees and costs incident to the foregoing as such amounts become due and payable, including amounts to third party administrators.

45.    None of the Employees owed wages are insiders of the Debtor.

46.    If the Debtor is unable to honor Employee Wages and pay or continue, as applicable, Employee Benefits for even a short time, Employee morale and loyalty will be compromised at a time when Employee support is most critical. It is likely that any

deterioration in Employee morale and welfare during this critical time would adversely impact the Debtor, the value of its assets and business, and ultimately its ability to maximize value for creditors and stakeholders. Therefore, the Debtor believes that payment of the prepetition amounts of Employee Wages and Benefits requested in the Motion and the continuation of the Employee Wages and Benefits on a post-petition basis is in the best interest of all interested parties.

## 2. Jade Greenwich Village Hotel

47. The Debtor employs approximately 74 employees (the "**Employees**"), of whom approximately 66 are full-time salaried Employees and approximately 8 are part-time Employees. The Employees perform a variety of critical functions, including managing the operations of the Debtor's facilities, maintenance, housekeeping, reception, and food service, etc, as well as performing many administrative, accounting, supervisory, audit, consultant, management and other tasks. The Employees' skills, knowledge and understanding of the Debtor's infrastructure, operations and client relations are essential to maintaining the value of the Debtor's assets and business pending a sale transaction.

48. Employees are paid every Friday, covering wages earned the prior week (Monday through Sunday). For instance, the wages paid on August 28, 2015 covered the period Monday, August 17, 2015 through Sunday, August 23, 2015. The Debtor's next scheduled payroll is September 11th, covering Monday, August 31, 2015 through Sunday, September 6, 2105.

49.    For the first 7 months of 2015, the Debtor's average aggregate monthly payroll was approximately $236,172.01, and average aggregate monthly payroll tax was approximately $93,000.00 ("Employee Wages"). If certain profitability, productivity and other benchmarks are achieved, the Debtor pays quarterly or monthly performance bonuses to eight employees based on a percentage of the employee's earned base salary or a preset fixed amount. The Debtor also reimburses eligible employees for certain out-of-pocket business expenses incurred in the ordinary course of business, such as minor travel, meals and entertainment and marketing and other business expenses.

50.    In the ordinary course of business, and as is customary with most companies, the Debtor offers a benefits package to some or all of its employees (the "Employee Benefits"), including (1) policies for vacation and sick pay, (2) workers' compensation benefits, (3) New York disability coverage insurance, and (4) health care and dental insurance for which the Debtor pays 50% and 25% of the premiums, respectively for eight managers and senior employees. The Debtor maintains a workers' compensation and employers' liability insurance policy with Travelers Indemnity Company ("Workers' Compensation Policy"). The Debtor maintains a disability coverage insurance policy with The Hartford Insurance Company ("Disability Coverage Policy"). The combined monthly cost of the Employee Benefits to the Debtor is approximately $4,400 per month.

51.    As of the Petition Date, the Debtor owes approximately $94,343.79 in unpaid Employee Wages and Employee Benefits, including approximately $28,478.42 in wages, $3,645.24 in employer payroll taxes and workers' compensation costs and

$58,604.89 in accrued vacation and sick days. As of the Petition Date, no single non-insider Employee is owed Employee Wages and Employee Benefits in an amount in excess of $12,475. To minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as expected, and to maintain morale and preserve its essential workforce during this critical time, the Debtor seeks authority, in its discretion, to pay and honor certain prepetition claims for the Employee Wages and Employee Benefits, and to pay all fees and costs incident to the foregoing as such amounts become due and payable, including amounts to third party administrators.

52.     None of the Employees owed wages are insiders of the Debtor.

53.     If the Debtor is unable to honor Employee Wages and pay or continue, as applicable, Employee Benefits for even a short time, Employee morale and loyalty will be compromised at a time when Employee support is most critical. It is likely that any deterioration in Employee morale and welfare during this critical time would adversely impact the Debtor, the value of its assets and business, and ultimately its ability to maximize value for creditors and stakeholders. Therefore, the Debtor believes that payment of the prepetition amounts of Employee Wages and Benefits requested in the Motion and the continuation of the Employee Wages and Benefits on a post-petition basis is in the best interest of all interested parties.

### 3.     Wyndham Flatiron Hotel

54.     The Debtor employs approximately 21 employees (the "Employees"), of whom approximately 20 are full-time salaried Employees and approximately 1 part-

time Employee. The Employees perform a variety of critical functions, including

managing the operations of the Debtor's facilities, maintenance, housekeeping,

reception, and food service, etc, as well as performing many administrative, accounting,

supervisory, audit, consultant, management and other tasks. The Employees' skills,

knowledge and understanding of the Debtor's infrastructure, operations and client

relations are essential to maintaining the value of the Debtor's assets and business

pending a sale transaction.

55.    Employees are paid every other Friday, covering wages earned the prior

two weeks (Monday through Sunday). For instance, the wages paid on August 21, 2015

cover the period Monday, August 3, 2015 through Sunday, August 16, 2015.  The

Debtor's next scheduled payroll is September 18, 2015, covering Monday, August 31,

2015 through Sunday, August 13, 2105.

56.    For the first 7 months of 2015, the Debtor's average aggregate monthly

payroll was approximately $101,611.55, and average aggregate monthly payroll tax was

approximately $53,000.00 ("Employee Wages"). The Debtor also pays quarterly

performance bonuses to the General Manager, the Assistant General Manager and the

Front Office Manager of the Hotel equal to up to 20%, 14% and 14% of respectively their

earned base salary if certain profitability, productivity and other benchmarks are

achieved. The Debtor also reimburses eligible employees for certain out-of-pocket

business expenses incurred in the ordinary course of business, such as minor travel,

meals and entertainment, marketing and other business expenses.

57.    In the ordinary course of business, and as is customary with most companies, the Debtor offers a benefits package to some or all of its employees (the "Employee Benefits"), including (1) policies for vacation and sick pay, (2) workers' compensation benefits, (3) New York disability coverage insurance, and (4) health care and dental insurance for which the Debtor pays 50% and 25% of the premiums, respectively for five managers and senior employees. The Debtor maintains a workers' compensation and employers' liability insurance policy with Travelers Indemnity Company ("Workers' Compensation Policy"). The Debtor maintains a disability coverage insurance policy with The Hartford Insurance Company ("Disability Coverage Policy"). The combined monthly cost of the Employee Benefits to the Debtor is approximately $2,800 per month.

58.    As of the Petition Date, the Debtor owes approximately $47,372.54 in unpaid Employee Wages and Employee Benefits, including approximately $10,828.35 in wages, $1,386.03 in employer payroll taxes and workers' compensation costs and $33,772.14 in accrued vacation and sick days. As of the Petition Date, no single non-insider Employee is owed Employee Wages and Employee Benefits in an amount in excess of $12,475.

59.    To minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as expected, and to maintain morale and preserve its essential workforce during this critical time, the Debtor seeks authority, in its discretion, to pay and honor certain prepetition claims for the Employee Wages and Employee Benefits, and to pay all fees and costs incident to

the foregoing as such amounts become due and payable, including amounts to third

party administrators.

60.     None of the Employees owed wages are insiders of the Debtor.

61.     If the Debtor is unable to honor Employee Wages and continue Employee

Benefits for even a short time, Employee morale and loyalty will be compromised at a

time when Employee support is most critical. It is likely that any deterioration in

Employee morale and welfare during this critical time would adversely impact the

Debtor, the value of its assets and business, and ultimately its ability to maximize value

for creditors and stakeholders. Therefore, the Debtor believes that payment of the

prepetition amounts of Employee Wages and Benefits requested in the Motion and the

continuation of the Employee Wages and Benefits on a post-petition basis is in the best

interest of all interested parties.

## C.     ADEQUATE ASSURANCE OF UTILITIES

62.     In connection with the daily operations at the Debtors' hotel facilities, the

Debtors uses electricity, water, gas, sewer, telephone and telecommunication, waste

removal, and other utility services as follows:  (i) Best Western Seaport Hotel uses

approximately four utility companies through roughly four different accounts and

incurs an average of approximately $19,300 in utility fees and charges per month in the

aggregate; (ii) Jade Greenwich Village Hotel uses approximately five utility companies

through roughly eight different accounts and incurs an average of approximately

$31,000 in utility fees and charges per month in the aggregate; and (iii) Wyndham

Flatiron Hotel uses approximately five utility companies through roughly eight

different accounts and incurs an average of approximately $27,400 in utility fees and

charges per month in the aggregate.

63.    True and correct lists of the companies that provide utility services (the

"Utilities") to each of the Debtors are attached to the motion of each Debtor seeking to

establish procedures to resolve any disputes regarding adequate assurance of the future

payment of Utilities as Exhibit A[2] thereto.

64.    Uninterrupted utility services are essential to the Debtors' ongoing

operations. The Debtor expects that some or all of the Utilities may alter, refuse, or

discontinue service if adequate assurance of payment for post-petition services is not

provided to such Utilities. The Debtors want to establish reasonable procedures to allow

the Court to determine whether such adequate assurances have been provided to the

Utilities to ensure that no delays occur in resolving any disputes that may arise and that

there will be no interruption in post-petition utility services that could adversely affect

the Debtors' ability to operate their business. Therefore, the requested relief is essential

to the Debtors' efforts.

### D.    MAINTAIN BANK ACCOUNTS AND FORMS

65.    The Debtors' business and financial affairs require the collection,

disbursement and movement of funds through numerous bank accounts.

---

[2]    The Debtor reserves the right to argue that some or all of the services provided by any listed Utility do not constitute "utility" services under section 366 of the Bankruptcy Code and such Utility is not entitled to adequate assurance with respect to such services.

66.    The Debtors' cash management system (the "**Cash Management System**")

consists of numerous accounts and is funded by receipts from the Debtors' business

operations.

67.    On and before the Petition Date, in the ordinary course of the Debtors'

business, the Debtors maintained the following bank accounts  (collectively, the "**Bank**

**Accounts**"):

| Number | Debtor | Bank | Account # | Account Description |
|--------|--------|------|-----------|---------------------|
| 1 | 33 Peck Slip Acquisition LLC | Bank of America | XXXXXXXX8612 | Checking Account- credit card receipts are deposited directly and all disbursements, including payroll come from this account. |
| 2 | 52 West 13th P, LLC | City National Bank | XXXXX4470 | Depository Account- credit card, cash and check deposits come into this account. |
| 3 | 52 West 13th P, LLC | City National Bank | XXXXX1361 | Operating Account – all disbursements are made from this account, including payroll. |
| 4 | 37 West 24th Street MT, LLC | Wells Fargo | XXXXXX8504 | Depository Account - credit card receipts come into this account. |
| 5 | 37 West 24th Street MT LLC | Bank of America | XXXXXXXXXX0624 | Depository and Sweep Account - this account holds all of the entities funds and automatically funds the "Operating Account" each day.  There are some credit card receipts direct to this account. |

| Number | Debtor | Bank | Account # | Account Description |
|--------|--------|------|-----------|---------------------|
| 6 | 37 West 24th Street MT LLC | Bank of America | XXXXXXXXXX0611 | Operating Account- all disbursements, including payroll, go through this account, which is funded daily by the Depository Account. |

68.    Of the accounts listed in the chart immediately above, numbers 1, 2, 4 and 5 are set up to receive credit card payments and deposits on a daily basis.  Closing these accounts would, at a minimum, create the risk of significant delay in receiving payments from customers and would unduly restrict the Debtors' cash flows at a critical time.

69.    Of the accounts listed in the chart immediately above, numbers 1, 3 and 6 are used to, among other things, fund payroll checks.  Because employees do not always cash their checks upon receipt, closing these accounts could cause hardship for those employees that have not cashed all of their payroll checks on a regular basis.

70.    The Debtors' businesses are dependent upon the regular stream of payments from customers, either by check or credit card; thus closing the Debtors' Bank Accounts could seriously damage the Debtors' cash position.  By allowing the Debtors to maintain the Bank Accounts solely to collect automatic deposits from credit cards and checks, all parties in interest, including employees, creditors, and the Estates, will benefit and the Debtors' rehabilitative efforts will be promoted.

71.     The Debtors will continue to maintain records with respect to transfers of cash, so that transactions can be ascertained, traced and recorded properly on applicable intercompany accounts.

72.     The Debtors represent that, to the best of their ability, no prepetition checks will be honored, unless authorized by separate order of the Court.  Except as otherwise ordered by this Court, the Banks listed above will be advised by the Debtors not to honor checks issued prior to the Petition Date on any of the Accounts.

73.     The Debtors will establish new debtor in possession accounts and will transfer all funds received to those accounts from the existing accounts on a daily basis and will utilize those accounts to pay all of their ordinary operating and other approved expenses.

74.     Given the Debtors' business and their reliance on credit card receipts, it would be difficult for the Debtors to establish an entirely new system of accounts and a new cash management system for each debtor entity.

75.     Under these circumstances, maintaining the Debtors' current accounts solely for the purpose of receiving credit card deposits and, if approved by the Court (as requested by other Motions), honoring employee payroll checks, is essential and in the best interests of the Debtors' respective Estates and creditors.  Furthermore, preserving the "business as usual" atmosphere and avoiding the unnecessary distractions that would inevitably be associated with any substantial disruption in the Debtors' cash flow will facilitate the Debtors' efforts in these cases.

76.    The Debtors represent that, to the best of their ability, no prepetition

checks will be honored, unless authorized by separate order of the Court.  To further

protect against the possible inadvertent payment of prepetition claims, and except as

otherwise ordered by this Court, the Banks will be advised by the Debtors not to honor

checks issued prior to the Petition Date on any of the Bank Accounts.  The Debtors'

personnel shall continue to maintain strict records with respect to all transfers of cash so

that they may readily account for all transfers and payments.

77.    It will be burdensome to the Debtors' Estates, as well as expensive and

disruptive to the Debtors' business operations, if the Debtors are not permitted to

continue using their existing business forms, such as daily hotel contracts, without

alteration or change.

78.    Unless the Debtors are permitted to maintain and utilize the existing

contracts and business forms, the Debtors and their Estates would be prejudiced, in that

the Debtors' Estates would incur unnecessary and substantial cost associated with

printing new contracts and business forms.

### E.    CASH COLLATERAL

#### 1.    Best Western Seaport Hotel

79.    The Debtor has prepared a six-month Budget consistent with its operating

history, current market conditions and its projected future performance during the

period covered by the Budget.  A true and correct copy of the Budget is attached as

Exhibit 2 to the motion. The Debtor reasonably believes that the Budget is adequate,

considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

80.    As of the Petition Date, the Lender claims that it was owed approximately $30,682,075.00, the Debtor's priority creditors were owed approximately $291,195.02 and the Debtor's general unsecured creditors were owed approximately $39,664.11. There are no other secured creditors that assert a lien against the Hotel.

81.    Concurrently with the filing of the Debtor's Chapter 11 Case and the filing of the Motion, the Debtor filed a proposed chapter 11 plan of reorganization (the "Plan") and will be filing a related motion for an order authorizing the Debtor to sell the Hotel free and clear of liens, claims, encumbrances and interests (the "Best Western Seaport Hotel Sale Motion"). Pursuant to the Best Western Seaport Hotel Sale Motion and Plan, the Debtor intends to sell the Hotel for $37.5 million, to pay the Lender and all other creditors in full and to make distributions to the Debtor's equity interest holders. The proposed sale to the stalking horse bidder for $37.5 million is subject to overbids.

82.    Prior to the commencement of the Debtor's Chapter 11 Case, the Debtor informed the Lender about the contemplated chapter 11 filing and the Debtor's intention to seek to sell the Hotel in connection with a chapter 11 plan. The Debtor also advised the Lender that the Debtor would seek to use the Lender's cash collateral until the sale could be consummated and the Plan would become effective.

83.    As of the Petition Date, the Lender claims that the Debtor was indebted to the Lender in the amount of approximately $30,682,075.00, comprised of principal in the amount of $30,523,101.00, interest in the amount of approximately $158,974.00 and any

additional amounts, including without limitation costs, fees, and additional interest, if

allowed, that the Lender may assert, pursuant to the following documents between the

Debtor and the Lender:

 a. The Master Loan Agreement between the Debtor and the Lender

dated as of March 14, 2014;

 b. The Consolidated, Amended and Restated Acquisition Loan

Promissory Note in the amount of $28,264,318.28 dated March 14, 2014, the

Consolidated, Amended and Restated Acquisition Loan Mortgage, Assignment

of Rents, Security Agreement and Fixture Filing dated March 14, 2014, as

recorded in the Office of the City Register of the City of New York (the

"Register's Office") on May 15, 2014 as CRFN2014000167244, the Acquisition

Loan Assignment of Rents dated March 14, 2014, as recorded with the Register's

Office on May 15, 2014 as CRFN2014000167245;

 c. The Building Loan Agreement dated as of March 14, 2014, the

Building Loan Promissory Note in the amount of $3,650,000 dated March 14,

2014, the Building Loan Mortgage, Assignment of Rents, Security Agreement and

Fixture Filing dated as of March 14, 2014 as recorded in the Register's Office on

May 15, 2014 as CRFN2014000167246, and the Building Loan Assignment of

Rents and Leases dated as of March 14, 2014 as recorded in the Register's Office

on May 15, 2014 as CRFN2014000167247;

 d. The Project Loan Agreement dated as of March 14, 2014, the Project

Loan Promissory Note in the amount of $4,585,681.72 dated March 14, 2014, the

Project Loan Mortgage, Assignment of Rents, Security Agreement and Fixture

Filing dated as of March 14, 2014, as recorded in the Register's Office on May 15,

2104 as CRFN2014000167248, and the Project Loan Assignment of Rents and

Leases dated as of March 14, 2014, as recorded in the Register's Office on May 15,

2014 as CRFN2014000167249;

e.      The Gap Promissory Note in the amount of $23,077,305.20 dated

March 14, 2014, and the Gap Mortgage dated as of March 14, 2014, and recorded

with the Register's office on May 15, 2014, as RFN2014000167243; and

f.      The Full Recourse Guaranty dated as of March 14, 2014 by Gemini

Real Estate Advisors, LLC ("Gemini"), the Completion Guaranty dated as of

March 14, 2014 by Gemini, the Guaranty (Recourse Carve-outs) dated as of

March 14, 2014 by Gemini, and the Indemnity Agreement dated as of March 14,

2014, by the Debtor and Gemini.

84.      As the owner of a guest-filled hotel whose operation is dependent on cash

flow, the Debtor must continue to operate the Hotel to maintain and preserve the

Debtor's value and the Lender's Collateral. The Debtor urgently requires the use of the

Lender's cash collateral to operate, maintain and preserve the Hotel pending its sale

and the effectiveness of the Plan. As set forth in the Budget, the Debtor requires cash for

the primary purposes of paying: (1) employees and related benefits, (2) supplies, (3)

utilities, (4) taxes, (5) commissions and sales expenses and (6) to the extent allowed by

the Bankruptcy Court, professional fees.

85.    As reflected in the Budget, the Debtor projects that its cash balance will be approximately $998,662 for the week ending September 7, 2015 and approximately $933,977 by the time the Hotel is sold on or before December 21, 2015.

### 2.    Jade Greenwich Village Hotel

86.    The Debtor has prepared a six-month Budget consistent with its operating history, current market conditions and its projected future performance during the period covered by the Budget.  A true and correct copy of the Budget is attached as Exhibit 2 to the motion. The Debtor reasonably believes that the Budget is adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

87.    As of the Petition Date, the Lender claims that it was owed approximately $50,771,788.19, the Debtor's priority creditors were owed approximately $438,989.59 and the Debtor's general unsecured creditors were owed approximately $106,671.74. The other secured creditors that assert a lien against certain assets of the Debtor are (a) US Foods, Inc., which is not owed any amounts but which filed a UCC-1 financing statement asserting a purchase money security interest in certain goods, inventory, equipment and fixtures, and a general security interest in all other personal property assets of the Debtor, and (b) Polar Bear of New York, Inc., which is not owed any amounts but which filed a UCC-1 financing statement as a precaution with respect to the water dispensing machines provided to the Debtor's premises.

88.    Concurrently with the filing of the Debtor's Chapter 11 Case and the filing of the Motion, the Debtor filed a proposed chapter 11 plan of reorganization (the

"Plan") and will file a related motion for an order authorizing the Debtor to sell the

Hotel free and clear of liens, claims, encumbrances and interests (the "Jade Greenwich

Sale Motion"). Pursuant to the Sale Motion and Plan, the Debtor seeks an order

authorizing the Debtor to sell the Hotel for $78 million, to pay the Lender and all other

creditors in full and to make distributions to the Debtor's equity interest holders. The

proposed sale to the stalking horse bidder for $78 million is subject to overbids.

89.     Prior to the commencement of the Debtor's Chapter 11 Case, the Debtor

informed the Lender about the contemplated chapter 11 filing and the Debtor's

intention to seek to sell the Hotel in connection with a chapter 11 plan. The Debtor also

advised the Lender that the Debtor would seek to use the Lender's cash collateral until

the sale could be consummated and the Plan would become effective.

90.     As of the Petition Date, the Lender claims that the Debtor was indebted to

the Lender in the amount approximately $50,771,788.00, comprised of principal in the

amount of $50,500,000.00, interest in the amount of $271,788.00 as of the Petition Date

and any additional amounts, including without limitation costs, fees, and additional

interest, if allowed, that the Lender may assert, pursuant to the following documents

between the Debtor and the Lender:

a.      The Loan Agreement between the Debtor and the Lender dated as of

June 25, 2013;

b.      The Amended, Restated and Consolidated Promissory Note in the

amount of $50,500,000.00 dated as of June 25, 2013, and the Amended, Restated

and Consolidated Mortgage, Assignment of Leases and Rents, Security

Agreement and Fixture Filing dated as of June 25, 2013, as recorded in the Office

of the City Register of the City of New York (the "Register's Office") on July 23,

2013, as CRFN2013000289374, as assigned to CEMF I USB LLC from Cornerstone

Enhanced Mortgage Fund I REIT LLC pursuant to an Assignment of Mortgage

dated as of September 3, 2014, as recorded in the Register's Office on September

30, 2014 as CFRN2014000321711;

      c.     The Gap Note in the amount of $22,647,171.00 dated as of June 25,

2013, and the GAP Mortgage dated as of June 25, 2013, and recorded in the

Register's Office on July 23, 2013, as CRFN2013000289373;

      d.     The Recourse Guaranty Agreement dated as of June 25, 2013 by

William T. Obeid, Christopher La Mack, Dante Massaro and the Lender, the

Sumitomo Mitsui Banking Corporation Guaranty dated as of June 25, 2013, by

Sumitomo Mitsui Banking Corporation, and the Environmental Indemnification

Agreement dated as of June 25, 2013, by and between William T. Obeid,

Christopher La Mack, Dante Massaro and the Lender;

      e.     The UCC-l and UCC-3 Financing Statements filed in New York City,

the State of New York and the State of Delaware;

      f.     The Assignment and Subordination of Management Agreement

dated as of June 25, 2013, by and among Gemini Property Management, LLC, the

Debtor and the Lender, and the Assignment and Subordination of Management

Agreement dated as of June 25, 2013, by and among Y&F Associates LLC, the

Debtor and the Lender;

g.    The letter agreement dated as of June 25, 2013 regarding required

post-closing actions from the Debtor and accepted and agreed to by the Lender;

h.    The Collateral Assignment of Interest Rate Cap Agreement dated

June 25, 2013, by and between the Debtor and SMBC Capital Markets, Inc., in

favor of the Lender; and

i.    The Affidavit under Section 275 Tax Law, Assignment of Mortgage,

executed by William T. Obeid on June 21, 2013.

91.    As the owner of a guest-filled hotel whose operation is dependent on cash

flow, the Debtor must continue to operate the Hotel to maintain and preserve the

Debtor's value and the Lender's Collateral. The Debtor urgently requires the use of the

Lender's cash collateral to operate, maintain and preserve the Hotel pending its sale

and the effectiveness of the Plan.  As set forth in the Budget, the Debtor requires cash

for the primary purposes of paying: (1) employees and related benefits, (2) supplies, (3)

utilities, (4) taxes, (5) commissions and sales expenses and (6) to the extent allowed by

the Bankruptcy Court, professional fees.

92.    As reflected in the Budget, the Debtor projects that its cash balance will be

approximately $783,499 for the week ending September 7, 2015 and approximately

$2,079,503 the week ending December 21, 2015, on or before which the Hotel will be

sold.

### 3.    Wyndham Flatiron Hotel

93.    The Debtor has prepared a six-month Budget consistent with its operating

history, current market conditions and its projected future performance during the

period covered by the Budget. A true and correct copy of the Budget is attached as Exhibit 2 to the motion. The Debtor reasonably believes that the Budget is adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

94.    As of the Petition Date, the Lender claims that it was owed approximately $33,594,943.00, the Debtor's priority creditors were owed approximately $333,243.90 and the Debtor's general unsecured creditors were owed approximately $46,132.62. There are no other secured creditors that assert liens against the Hotel.

95.    Concurrently with the filing of the Debtor's Chapter 11 Case and the filing of the Motion, the Debtor filed a proposed chapter 11 plan of reorganization (the "Plan") and a related motion for an order authorizing the Debtor to sell the Hotel free and clear of liens, claims, encumbrances and interests (the "Sale Motion"). Pursuant to the Sale Motion and Plan, the Debtor intends to sell the Hotel for $57 million to pay the Lender and all other creditors in full and to make distributions to the Debtor's equity interest holders. The proposed sale to the stalking horse bidder for $57 million is subject to overbids.

96.    Prior to the commencement of the Debtor's Chapter 11 Case, the Debtor informed the Lender about the contemplated chapter 11 filing and the Debtor's intention to seek to sell the Hotel pursuant to section 363 of the Bankruptcy Code in connection with a chapter 11 plan. The Debtor also advised the Lender that the Debtor would seek to use the Lender's cash collateral until the sale could be consummated and the Plan would become effective.

97.     As of the Petition Date, the Lender claims that the Debtor was indebted to the Lender in the amount approximately $33,594,943.00 million, comprised of principal in the amount of $33,424,745.00, interest in the amount of $170,199.00 and any additional amounts, including without limitation costs, fees, and additional interest, if allowed, that the Lender may assert, pursuant to the following documents between the Debtor and the Lender:

a.     The Master Loan Agreement between the Debtor and the Lender dated as of November 21, 2014, First Amendment to Master Loan Agreement dated as of January 13, 2015, and Collateral Assignment of Interest Rate Cap Agreement dated as of November 21, 2013;

b.     The Amended, Restated and Consolidated, Term Loan Promissory Note in the amount of $39,530,000.00 dated November 21, 2013, the Amended, Restated and Consolidated Term Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated November 21, 2013 as recorded in the Office of the City Register of the City of New York (the "Register's Office") on November 26, 2013 as CRFN2013000489474, as assigned by SBNP SIA Mortgage I LLC ("SBNP") to Lender by Assignment of Mortgage dated as of January 9, 2015 and recorded in the Register's Office on January 23, 2015 as CRFN2015000034454;

c.     Assignment of Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as

of November 21, 2013 as recorded in the Register's Office on November 26, 2013 as CRFN 2013000489469;

      d.     The Building Loan Agreement dated as of November 21, 2013, the Building Loan Promissory Note in the amount of $1,009,580.00 dated November 21, 2013, the Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of November 21, 2013 as recorded in the Register's Office on November 26, 2013 as CRFN2013000489475, as assigned to Lender by SBNP pursuant to an Assignment of Mortgage dated as of January 9, 2015, as recorded in the Register's Office on January 30, 2015 as CRFN2015000034455, as further assigned to Bank of American, N.A. as Administrative Agent by Lender pursuant to an Assignment of Mortgage dated as of January 12, 2015, as recorded in the Register's Office on January 30, 2015 as CRFN 2105000034458;

      e.     The Project Loan Agreement dated as of November 21, 2013, the Project Loan Promissory Note in the amount of $4,460,420.00 dated November 21, 2013, the Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of November 21, 2013 as recorded in the Register's Office on November 26, 2104 as CRFN2013000489476, as assigned to Lender by SBNP pursuant to an Assignment of Mortgage dated as of January 9, 2015, as recorded in the Register's Office on January 30, 2015 as CRFN2015000034456, as further assigned to Bank of American, N.A. as Administrative Agent by Lender pursuant to an Assignment of Mortgage dated

as of January 12, 2015, as recorded in the Register's Office on January 30, 2015 as

CRFN 2105000034459;

f.    The Gap Promissory Note in the amount of $13,030,000.00 dated

November 21, 2013 and the Gap Mortgage dated as of November 21, 2013 and

recorded with the Register's office on November 26, 2013 as

CRFN2013000489473, as assigned to Lender by SBNP pursuant to an Assignment

of Mortgage dated as of January 9, 2015, as recorded in the Register's Office on

January 30, 2015 as CRFN2015000034454, as further assigned to Bank of

American, N.A. as Administrative Agent by Lender pursuant to an Assignment

of Mortgage dated as of January 12, 2015, as recorded in the Register's Office on

January 30, 2015 as CRFN 2105000034457;

g.    The Recourse Guaranty Agreement dated as of November 21, 2013

by Gemini New York Hospitality Fund, LLC ("Gemini"), the Guaranty of

Payment and Completion dated as of November 21, 2013 by Gemini, the

Franchise Termination Indemnification Agreement dated as of November 21,

2013 by the Debtor and Gemini, the Assignment and Subordination of

Management Agreement dated as of November 21, 2013 by and between Gemini

Property Management, LLC, the Debtor and the Lender, and the Environmental

Indemnification Agreement by the Debtor and Gemini; and

h.    The UCC-l and UCC-3 Financing Statements filed in New York City,

the State of New York and the State of Delaware.

98.     As the owner of a guest-filled hotel whose operation is dependent on cash flow, the Debtor must continue to operate the Hotel to maintain and preserve the Debtor's value and the Lender's Collateral. The Debtor urgently requires the use of the Lender's cash collateral to operate, maintain and preserve the Hotel pending its sale and the effectiveness of the Plan.  As set forth in the Budget, the Debtor requires cash for the primary purposes of paying: (1) employees and related benefits, (2) supplies, (3) utilities, (4) taxes, (5) commissions and sales expenses and (6) to the extent allowed by the Bankruptcy Court, professional fees.

99.     As reflected in the Budget, the Debtor projects that its cash balance will be approximately $2,252,297 for the week ending September 7, 2015 and approximately $2,354,395  for the week ending December 21, 2015, on or before which the Hotel should be sold.

### 4.     Bryant Park Development Project

100.     The Debtor has prepared a six-month Budget consistent with its recent experience with the Development Site.  A true and correct copy of the Budget is attached as Exhibit 2 to the motion. The Debtor reasonably believes that the Budget is adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

101.     As of the Petition Date, the Lender claims that it was owed approximately $19,138,752.74, the Debtor had no priority creditors and the Debtor's general unsecured creditors were owed approximately $247,399.04. There are no other secured creditors that assert a lien against the Development Site.

102.    Concurrently with the filing of the Debtor's Chapter 11 Case and the filing of the Motion, the Debtor filed a proposed chapter 11 plan of reorganization (the "Plan") and will file a related motion for an order authorizing the Debtor to sell the Development Site free and clear of liens, claims, encumbrances and interests (the "Sale Motion"). Pursuant to the Sale Motion and Plan, the Debtor intends to sell the Development Site for $25.5 million, to pay the Lender and all other creditors in full and to make distributions to the Debtor's equity interest holders. The proposed sale to the stalking horse bidder for $25.5 million is subject to overbids.

103.    Prior to the commencement of the Debtor's Chapter 11 Case, the Debtor informed the Lender about the contemplated chapter 11 filing and the Debtor's intention to seek to sell the Development Site pursuant to section 363 of the Bankruptcy Code in connection with a chapter 11 plan. The Debtor also advised the Lender that the Debtor would seek to use the Lender's cash collateral until the sale can be consummated and the Plan becomes effective.

104.    As of the Petition Date, the Lender claims that the Debtor was indebted to the Lender in the amount approximately $19,401,571.06 million and additional amounts, including without limitation costs, fees, and additional interest, if allowed, that the Lender may assert, pursuant to the following documents between the Debtor and the Lender:

a.    The Master Loan Agreement between the Debtor and the Lender dated as of October 17, 2013;

b.     The Gap Note in the amount of $1,494,662.06 dated October 17, 2013

and the Gap Mortgage dated October 17, 2013, as recorded in the Office of the

City Register of the City of New York (the "Register's Office") as

CRFN2013000461839 on November 8, 2013;

c.     The Consolidated, Amended and Restated Acquisition Loan

Promissory Note in the amount of $50,520,000.00 dated October 17, 2013, the

Consolidated, Amended and Restated Acquisition Loan Mortgage, Assignment

of Rents, Security Agreement and Fixture Filing dated October 17, 2013, as

recorded in the Register's Office as CFRN2013000461840 on November 8, 2013,

Section 275 Affidavit with respect to the said Mortgage, Assignment, Security

Agreement and Fixture Filing, and the Acquisition Loan Assignment of Rents

and Leases dated October 17, 2013, as recorded in the Register's Office as

CFRN2013000461841 on November 8, 2013;

d.     The Building Loan Agreement dated as of October 17, 2013, the

Building Loan Promissory Note in the amount of $25,678,955.36 dated October

17, 2013, the Building Loan Mortgage, Assignment of Rents, Security Agreement

and Fixture Filing dated as of October 17, 2013, as recorded in the Register's

Office as CFRN2013000461842 on November 8, 2013, and the Building Loan

Assignment of Rents and Leases dated as of October 17, 2013, as recorded in the

Register's Office CFRN2013000461843 on November 8, 2013;

e.     The Project Loan Agreement dated as of October 17, 2013, the Project

Loan Promissory Note in the amount of $10,846,832.58 dated October 17, 2013,

the Project Loan Mortgage, Assignment of Rents, Security Agreement and

Fixture Filing dated as of October 17, 2013, as recorded in the Register's Office

CFRN2013000461844 on November 8, 2013, and the Project Loan Assignment of

Rents and Leases dated as of October 17, 2013, as recorded in the Register's

Office as CFRN2013000461845 on November 8, 2013;

      f.     The Full Recourse Guaranty dated as of October 17, 2013, by Gemini

Real Estate Advisors, LLC ("Gemini"), the Completion Guaranty dated as of

October 17, 2013 by Gemini, the Guaranty (Recourse Carve-outs) dated as of

October 17, 2013 by Gemini, and the Indemnity Agreement dated as of October

17, 2013 by the Debtor and Gemini; and

      g.     The UCC-l Financing Statements filed in New York City, the State of

New York and the State of Delaware.

105.    As the owner of a development parcel of land in New York City, the

Debtor must maintain and preserve the Debtor's value and the Lender's Collateral. The

Debtor urgently requires the use of the Lender's cash collateral to maintain and

preserve the Development Site pending its sale and the effectiveness of the Plan. As set

forth in the Budget, the Debtor requires cash for the primary purposes of paying: (1)

insurance and security and (2) property taxes.

106.    As reflected in the Budget, the Debtor projects that its cash balance will be

approximately $157,493 for the week ending September 7, 2015 and approximately

$116,406 by the time the Hotel is sold on or before December 21, 2015.

**III.**
**Local Rule 1007 Disclosures**

107.     Pursuant to and in accordance with Bankruptcy Rule 1007(d) and Local

Rule 1007-2, the following information is attached hereto and incorporated by reference

herein.

108.     Schedule 1. Pursuant to Local Rule 1007-2(a)(3), Schedule 1 sets forth a list

of the committees formed prior to the filing of the Debtors' chapter 11 petitions.

109.     Schedule 2. Pursuant to Local Rule 1007-2(a)(4), Schedule 2 sets forth a list

of the names and addresses of the creditors holding the 20 largest unsecured claims

against each Debtor, excluding insiders. This list also includes the amount of each claim,

and, if appropriate, an indication whether such claim is contingent, unliquidated,

disputed or partially secured, subject to the Debtors' rights to dispute the validity of

any claims.

110.     Schedule 3. Pursuant to Local Rule 1007-2(a)(5), Schedule 3 sets forth a list

of the names and addresses of the creditors holding the five largest secured claims

against each Debtor. This list also includes the amount of each claim, a brief description

of the type of collateral securing the claim, and whether the claim or lien is disputed,

subject to the Debtors' rights to dispute the validity of any claims.

111. <u>Schedule 4</u>. Pursuant to Local Rule 1007-2(a)(6), Schedule 4 sets forth a summary of the assets and liabilities of each Debtor as of the Petition Date.

112. <u>Schedule 5</u>. Pursuant to Local Rule 1007-2(a)(7), Schedule 5 lists the members of each of the Debtors.

113. <u>Schedule 6</u>. Pursuant to Local Rule 1007-2(a)(8), Schedule 6 sets forth a list of the Debtors' property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor (other than bank accounts which may be subject to claims or setoff), or agent for any such entity.

114. <u>Schedule 7</u>. Pursuant to Local Rule 1007-2(a)(9), Schedule 7 sets forth a list of the premises owned, leased or held under other arrangement from which the Debtors operate their business.

115. <u>Schedule 8</u>. Pursuant to Local Rule 1007-2(a)(10), Schedule 8 sets forth a list of the locations of the Debtors' substantial assets and books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

116. <u>Schedule 9</u>. Pursuant to Local Rule 1007-2(a)(11), Schedule 9 sets forth a list identifying the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their property, where a judgment against the Debtors or a seizure of their property may be imminent.

117. <u>Schedule 10</u>. Pursuant to Local Rule 1007-2(a)(12), Schedule 10 sets forth a list of the names of the individuals who comprise the Debtors' existing senior management and a brief summary of their relevant responsibilities and experience.

directors, stockholders, and financial and business consultants retained by the Debtors, for the thirty-day period following the filing of the Debtors' Chapter 11 Petitions.

119.   <u>Schedule 12</u>. Pursuant to Local Rule 1007-2(b)(3), Schedule 12 includes a 26-week budget for each of the Debtors.

120.   Notwithstanding anything in this Declaration or on any of the exhibits attached hereto to the contrary, nothing contained in this Declaration or on any of the exhibits or schedules attached hereto is intended to be, or should be deemed or construed as, an admission with respect to: (a) the liability for, the amount of, the enforceability of or the validity of any claim; (b) the existence, validity, enforceability or perfection of any lien, mortgage, charge, pledge or other grant of security for any claim; (c) the proper characterization of any transaction or financing as a sale or financing; or (d) any interest, or lack of interest, of the Debtors in property The Debtors specifically reserve the right to challenge any claim or any transaction or any alleged security for any claim on any and all bases, and to seek turnover of any property to the full extent permitted under the Code.

I declare that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of September 2015 at _____, N.C. _____.

_____

Christopher La Mack

Schedule 1
Committees

Pursuant to Local Rule 1007-2(a)(3), the Debtors do not believe that any committee has been formed prior to the petition date.

**Schedule 2**

Pursuant to Local Rule 1007-2(a)(4) List of 20 Largest Unsecured Creditors for Each Debtor is attached.

# 20 LARGEST LIST
# 33 Peck Slip Acquisition LLC

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re   **33 Peck Slip Acquisition LLC**                                    Case No. _____
                                        Debtor(s)              Chapter      **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **Active Networks**<br>**5110 Lancaster Street**<br>**Harrisburg, PA 17111** | **Active Networks**<br>**Attn: Tabatha Brickner**<br>**5110 Lancaster Street**<br>**Harrisburg, PA 17111**<br>**(717) 540-5679 ext. 203** | **Trade Debt** | | 432.00 |
| **Am Maintenance**<br>**286 Grasmere Dr.**<br>**Staten Island, NY 10305** | **Am Maintenance**<br>**Attn: Angela Martucci**<br>**286 Grasmere Dr.**<br>**Staten Island, NY 10305**<br>**(718) 816-1918** | **Trade Debt** | | 245.03 |
| **American Hotel Register**<br>**P.O. Box 71299**<br>**Chicago, IL 60694-1299** | **American Hotel Register**<br>**Attn: Josh Wilson**<br>**P.O. Box 71299**<br>**Chicago, IL 60694-1299**<br>**(800) 323-5686 ext. 1549** | **Trade Debt** | | 653.32 |
| **Carbons Golden Malted**<br>**PO Box 129**<br>**Concordville, PA 19331** | **Carbons Golden Malted**<br>**Attn: Tracy Elkins**<br>**PO Box 129**<br>**Concordville, PA 19331**<br>**(574) 247-2270** | **Trade Debt** | | 230.00 |
| **Carday Associates**<br>**7130 Columbia Gateway Dr.**<br>**Columbia, MD 21046-2966** | **Carday Associates**<br>**Attn: Ivan Betancourt**<br>**7130 Columbia Gateway Dr.**<br>**Columbia, MD 21046-2966**<br>**(410) 872-9020** | **Health Insurance Premium** | | 8,700.00 |
| **Classic Recycling N. Y Corp**<br>**409 River Road, Ste #1**<br>**Clifton, NJ 07014** | **Classic Recycling N. Y Corp**<br>**Attn: Customer Service**<br>**409 River Road, Ste #1**<br>**Clifton, NJ 07014**<br>**(973) 777-0600** | **Trade Debt** | | 952.66 |
| **Collins Bro. Worldwide, LLC**<br>**620 Fifth Ave.**<br>**Larchmont, NY 10538** | **Collins Bro. Worldwide, LLC**<br>**Attn: Eileen Rodriguez**<br>**620 Fifth Ave.**<br>**Larchmont, NY 10538**<br>**(973) 777-0600** | **Trade Debt** | | 3,872.68 |

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

B4 (Official Form 4) (12/07) - Cont.

In re **33 Peck Slip Acquisition LLC**                                     Case No. _____

_____
Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| | | | | |
|---|---|---|---|---|
| Con Edison<br>JAF Station<br>P.O. Box 1702<br>New York, NY 10116-1702 | Con Edison<br>Attn: Customer Service<br>JAF Station<br>P.O. Box 1702<br>New York, NY 10116-1702<br>(800) 752-6633 | Utility | | 6,754.18 |
| Concord Elevator<br>610 Chestnut Ridge Rd.<br>Chest Ridge, NY 10977 | Concord Elevator<br>Attn: Brian Sheehy/Michelle Timmerman<br>610 Chestnut Ridge Rd.<br>Chest Ridge, NY 10977<br>(718) 767-3304 | Trade Debt | | 1,039.76 |
| Fresh and Tasty<br>1568 Stillwell Ave.<br>Bronx, NY 10461 | Fresh and Tasty<br>Attn: Lisa Ruvolo<br>1568 Stillwell Ave.<br>Bronx, NY 10461<br>(718) 829-4536 | Trade Debt | | 3,066.75 |
| M3 Accounting<br>340 Jesse Jewell Pkwy SE<br>Suite 600<br>Gainesville, GA 30501 | M3 Accounting<br>Attn: Kathy Hall<br>340 Jesse Jewell Pkwy SE<br>STE 600<br>Gainesville, GA 30501<br>(770) 297-1925 ext. 257 | Trade Debt | | 365.38 |
| Premium Pest Control<br>P.O. Box 1261<br>Linden, NJ 07036 | Premium Pest Control<br>Attn: Monica Szabo<br>P.O. Box 1261<br>Linden, NJ 07036<br>(917) 693-7468 | Trade Debt | | 538.93 |
| Revinate Inc.<br>One Letterman Drive, Bldg C<br>Suite CM100<br>San Francisco, CA 94129 | Revinate Inc.<br>Attn: Customer Service<br>One Letterman Drive, Bldg C<br>Suite CM100<br>San Francisco, CA 94129<br>(415) 671-4703 # 2 | Trade Debt | | 220.00 |
| Sani Wash<br>58-90 55th Street<br>Maspeth, NY 11378 | Sani Wash<br>Attn: Aisha Agate<br>58-90 55th Street<br>Maspeth, NY 11378<br>(718) 729-1700 | Trade Debt | | 513.24 |
| Sonifi Solutions<br>3900 W. Innovation<br>Sioux Falls, SD 57107-7002 | Sonifi Solutions<br>Attn: Sarah Nelson<br>3900 W. Innovation<br>Sioux Falls, SD 57107-7002<br>(888) 563-4363 | Trade Debt | | 1,875.70 |
| Staples Advantage<br>Dept ATL<br>P.O. Box 405386<br>Atlanta, GA 30384-5386 | Staples Advantage<br>Attn: Customer Service<br>Dept ATL<br>P.O. Box 405386<br>Atlanta, GA 30384-5386<br>(888) 753-4106 | Trade Debt | | 74.10 |

B4 (Official Form 4) (12/07) - Cont.

In re   **33 Peck Slip Acquisition LLC**                                    Case No. _____
                        Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| | | | | |
|---|---|---|---|---|
| **Sysco Metro New York**<br>**20 Theodore Conrad Drive**<br>**Jersey City, NJ 07305, NJ**<br>**07305** | **Sysco Metro New York**<br>**Attn: Miryann Malzone**<br>**20 Theodore Conrad Drive**<br>**Jersey City, NJ 07305, NJ 07305**<br>**(201) 433-2000** | **Trade Debt** | | **6,441.78** |
| **Verizon**<br>**P.O.Box 660794**<br>**Dallas, TX 75266-0794** | **Verizon**<br>**Attn: Diep Cregar**<br>**P.O.Box 660794**<br>**Dallas, TX 75266-0794**<br>**(972) 729-7393** | **Trade Debt** | | **72.75** |
| **Vizergy**<br>**PO Box 551459**<br>**Jacksonville, FL 32255-1459** | **Vizergy**<br>**Attn: Tracy Toenjes**<br>**PO Box 551459**<br>**Jacksonville, FL 32255-1459**<br>**(904) 389-1130 ext 297** | **Trade Debt** | | **290.00** |
| **Wash it Right Express**<br>**352 South 1st Street**<br>**Brooklyn, NY 11211** | **Wash it Right Express**<br>**Attn: Victor Shallom**<br>**352 South 1st Street**<br>**Brooklyn, NY 11211**<br>**(718) 218-7282** | **Trade Debt** | | **3,325.85** |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Authorized Representative of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date   **August 28, 2015**                          Signature   **/s/ Christopher F. La Mack**
                                                                  **Christopher F. La Mack**
                                                                  **Authorized Representative**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

# 20 LARGEST LIST
# 36 West 38th Street LLC

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re    **36 West 38th Street LLC**                                          Case No. _____

                                          Debtor(s)                         Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or chapter 9*] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **AGL Industries**<br>**Attn: Dominick Lofaso**<br>**59-12 57th Street**<br>**Maspeth, NY 11378** | **AGL Industries**<br>**Attn: Dominick Lofaso**<br>**59-12 57th Street**<br>**Maspeth, NY 11378** | **Construction Costs** | **Contingent** | **4,449.78** |
| **Baker & Hostetler LLP**<br>**Attn: Christine Fagan**<br>**PO Box 70189**<br>**Cleveland, OH 44190-0189** | **Baker & Hostetler LLP**<br>**Attn: Christine Fagan**<br>**PO Box 70189**<br>**Cleveland, OH 44190-0189** | **Legal fees** | | **42,865.94** |
| **Eastern Air, Inc.**<br>**Attn: Mikhail Meschianinov**<br>**260 Johnson Ave.**<br>**Brooklyn, NY** | **Eastern Air, Inc.**<br>**Attn: Mikhail Meschianinov**<br>**260 Johnson Ave.**<br>**Brooklyn, NY** | **Construction Costs** | **Contingent** | **14,200.00** |
| **Ettinger Engineering Services**<br>**Attn: Eric Ettinger**<br>**505 Eight Avenue, 24th FL**<br>**New York, NY 10018** | **Ettinger Engineering Services**<br>**Attn: Eric Ettinger**<br>**505 Eight Avenue, 24th FL**<br>**New York, NY 10018** | **Engineering Services** | | **7,500.00** |
| **Faith Environmental**<br>**Attn: Boro Atanasoski**<br>**128 Stanley Street**<br>**East Rutherford, NJ 07073** | **Faith Environmental**<br>**Attn: Boro Atanasoski**<br>**128 Stanley Street**<br>**East Rutherford, NJ 07073** | **Construction Costs** | **Contingent** | **8,999.71** |
| **Gemini Jade Bryant Park Dev**<br>**16740 Birkdale Commons Pkwy**<br>**Suite 306**<br>**Huntersville, NC 28078** | **Gemini Jade Bryant Park Dev**<br>**16740 Birkdale Commons Pkwy**<br>**Suite 306**<br>**Huntersville, NC 28078** | **Development** | | **4,504.58** |
| **Gene Kaufman Archtitect PC**<br>**Attn: Gene Kaufman**<br>**525 Broadway, 8th FL**<br>**New York, NY 10012** | **Gene Kaufman Archtitect PC**<br>**Attn: Gene Kaufman**<br>**525 Broadway, 8th FL**<br>**New York, NY 10012** | **Architectural Services** | | **90,000.00** |
| **IBK Construction Group, LLC**<br>**Attn: Vlad Lyubarsky**<br>**617 Johnson Avenue**<br>**Brooklyn, NY 11237** | **IBK Construction Group, LLC**<br>**Attn: Vlad Lyubarsky**<br>**617 Johnson Avenue**<br>**Brooklyn, NY 11237** | **Construction Costs** | **Contingent** | **57,000.00** |

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

B4 (Official Form 4) (12/07) - Cont.

In re    **36 West 38th Street LLC**                                      Case No. _____
                                          Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **KD Brothers**<br>**39 Day Avenue**<br>**Bergenfield, NJ 07621** | **KD Brothers**<br>**39 Day Avenue**<br>**Bergenfield, NJ 07621** | **Construction Costs** | **Contingent** | **2,934.65** |
| **Skyline Scaffolding**<br>**Attn: Benny Redza**<br>**181 Coit Street**<br>**Irvington, NJ 07111** | **Skyline Scaffolding**<br>**Attn: Benny Redza**<br>**181 Coit Street**<br>**Irvington, NJ 07111** | **Construction Costs** | **Contingent** | **544.38** |
| **Thomas Manufacturing, Inc.**<br>**630 Ramsey Ave.**<br>**Hillside, NJ 07205** | **Thomas Manufacturing, Inc.**<br>**630 Ramsey Ave.**<br>**Hillside, NJ 07205** | **Construction Costs** | **Contingent** | **14,400.00** |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Authorized Representative of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date    **September  3, 2015**                          Signature _____
                                                                 **Christopher F. La Mack**
                                                                 **Authorized Representative**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

# 20 LARGEST LIST
## Gemini 37 West 24th Street MT, LLC

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re    **Gemini 37 West 24th Street MT, LLC**                                   Case No. _____
                                                    Debtor(s)          Chapter      **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| A&L CessPool Service Corp<br>38-40 Review Ave.<br>Long Island, NY 11101 | A&L CessPool Service Corp<br>Attn: Asaf Bochman<br>38-40 Review Ave.<br>Long Island, NY 11101<br>(718) 729-3018 | Trade Debt | | 306.48 |
| AETNA<br>C/O Ashton Benefits<br>P.O BOX 7247-0213<br>Philadelphia, PA 19170 | AETNA<br>C/O Ashton Benefits<br>Attn: Jason Paguiligan<br>P.O BOX 7247-0213<br>Philadelphia, PA 19170<br>(800) 297-7145 | Employee<br>Insurance Premium | | 2,810.55 |
| Andrew Hendricks<br>220 5th Ave 19th floor<br>New York, NY 10001 | Andrew Hendricks<br>220 5th Ave 19th floor<br>New York, NY 10001<br>(212) 858-9099 | Expense<br>Reimbursement | | 4,693.31 |
| Broadsoft Hospitality, Inc<br>Dept. 3465<br>PO Box 123465<br>Dallas, TX 75312 | Broadsoft Hospitality, Inc.<br>Attn: Stephanie Evers<br>Dept. 3465<br>PO Box 123465<br>Dallas, TX 75312<br>(561) 276-6202 | Trade Debt | | 1,495.07 |
| Central Office Alarm<br>140 South Columbus Ave.<br>Mount Vernon, NY 10550 | Central Office Alarm<br>Attn: Rick Collins<br>140 South Columbus Ave.<br>Mount Vernon, NY 10550<br>800-464-4828 | Trade Debt | | 349.04 |
| Cenveo Corporation<br>P.O. Box 802035<br>Chicago, IL 60680 | Cenveo Corporation<br>Attn: Rachel Nemeth<br>P.O. Box 802035<br>Chicago, IL 60680<br>(612) 460-2349 | Trade Debt | | 406.83 |
| Fabriclean<br>11-39 50th Avenue<br>Long Island, NY 11101 | Fabriclean<br>Attn: Robert D'Andrea<br>11-39 50th Avenue<br>Long Island, NY 11101<br>(718) 433-0130 | Trade Debt | | 6,206.05 |

B4 (Official Form 4) (12/07) - Cont.

In re   **Gemini 37 West 24th Street MT, LLC**        Case No. _____

               Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **Fire Department of New York**<br>**P.O BOX 840**<br>**New York, NY 10008** | **Fire Department of New York**<br>**Attn: Benjamin Fitzroy**<br>**P.O BOX 840**<br>**New York, NY 10008**<br>**718-999-2558** | **Trade Debt** | | **890.00** |
| **Genserve, INC.**<br>**100 Newton Rd.**<br>**Plainview, NY 11803** | **Genserve, INC.**<br>**Attn: Sue Kester**<br>**100 Newton Rd.**<br>**Plainview, NY 11803**<br>**(800) 247-7215** | **Trade Debt** | | **544.38** |
| **Guest Supply**<br>**P.o Box 910**<br>**Monmouth Junction, NJ 08852** | **Guest Supply**<br>**Attn: Margaret Tisi**<br>**P.o Box 910**<br>**Monmouth Junction, NJ 08852**<br>**(432) 694-5804** | **Trade Debt** | | **898.62** |
| **Home Depot Supply**<br>**P.O Box 509058**<br>**San Diego, CA 92150** | **Home Depot Supply**<br>**Attn: Dawn Bianco**<br>**P.O Box 509058**<br>**San Diego, CA 92150**<br>**(800) 798-8888** | **Trade Debt** | | **1,818.91** |
| **Hotel SystemsPRO**<br>**280 Interstate N. Circle,**<br>**STE 600**<br>**Atlanta, GA 30339** | **Hotel SystemsPRO**<br>**Attn: Natalie Roberts**<br>**280 Interstate N. Circle, STE 600**<br>**Atlanta, GA 30339**<br>**(770) 303-9911** | **Trade Debt** | | **1,900.00** |
| **Office Depot**<br>**P.O. Box 70025**<br>**Los Angeles, CA** | **Office Depot**<br>**Attn: Beau Nutt**<br>**P.O. Box 70025**<br>**Los Angeles, CA**<br>**(800) 721-6592** | **Trade Debt** | | **326.75** |
| **Ritesh Jariwala**<br>**220 5th Ave 19th floor**<br>**New York, NY 10001** | **Ritesh Jariwala**<br>**220 5th Ave 19th floor**<br>**New York, NY 10001**<br>**(212) 858-9099** | **Expense Reimbursement** | | **3,676.00** |
| **Staples Business Advantage**<br>**Dept. ATL**<br>**P.O. Box 415256**<br>**Boston, MA 2241** | **Staples Business Advantage**<br>**Dept. ATL**<br>**Attn:Moira Connelly**<br>**P.O. Box 415256**<br>**Boston, MA 2241**<br>**(888) 753-4102** | **Trade Debt** | | **20.02** |
| **Sysco Metro New York**<br>**20 Theodore Conrad Dr.**<br>**Jersey City, NJ 7305** | **Sysco Metro New York**<br>**Attn: Mary Ann Malzone**<br>**20 Theodore Conrad Dr.**<br>**Jersey City, NJ 7305**<br>**(201) 433-2000** | **Trade Debt** | | **489.45** |

**B4 (Official Form 4) (12/07) - Cont.**

In re    **Gemini 37 West 24th Street MT, LLC**                              Case No. _____
                    Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Time Warner Cable<br>P.O. Box 11820<br>Newark, NJ 07101 | Time Warner Cable<br>Attn: Marlene Marshalleck<br>P.O. Box 11820<br>Newark, NJ  07101<br>(877) 227-8711 | Trade Debt | | 1,813.00 |
| World Cinema<br>9801 Westheimer, #409<br>Houston, TX 77042 | World Cinema<br>Attn:Jill Hockett<br>9801 Westheimer, #409<br>Houston, TX 77042<br>(713) 266-2686 | Trade Debt | | 3,097.98 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Authorized Representative of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date    **August 28, 2015**                    Signature    **/s/ Christopher La Mack**
                                                            **Christopher La Mack**
                                                            **Authorized Representative**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

# 20 LARGEST LIST
# 52 West 13th P, LLC

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re    **52 West 13th Street P, LLC**                                                     Case No. _____
                                              Debtor(s)                          Chapter        **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or chapter 9*] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **Baldor Specialty Foods PO Box 5411, 19th FL New York, NY 10087** | **Baldor Specialty Foods Attn: Amit Ratanshi PO Box 5411, 19th FL New York, NY 10087 (718) 860-9700 x4593** | **Trade Debt** | | **6531.08** |
| **Bridgeton Holdings, LLC 220 5th Avenue New York, NY 10001** | **Bridgeton Holdings, LLC Attn: Stephen Cius 220 5th Avenue New York, NY 10001 (212) 823-0859** | **Management** | | **5248.04** |
| **DairyLand USA PO Box 30943 New York, NY 10087** | **DairyLand USA Attn: James Averyt PO Box 30943 New York, NY 10087 (646) 265-3429** | **Trade Debt** | | **2688.77** |
| **Clearvue Enterprises 1435 East 22nd Street Brooklyn, NY 11210** | **Clearvue Enterprises Attn: Sal 1435 East 22nd Street Brooklyn, NY 11210 (718) 256-1905** | **Trade Debt** | | **6770.80** |
| **Constellation New Energy 14217 Collections Center Dr. Chicago, IL 60693** | **Constellation New Energy Attn: Customer Service 14217 Collections Center Dr. Chicago, IL 60693 (877) 243-4968** | **Utility** | | **13838.66** |
| **Danesi Caffe 139 Fulton Street, STE 713 New York, NY 10038** | **Danesi Caffe Attn: Doris Dieckoff 139 Fulton Street, STE 713 New York, NY 10038 (631) 901-1586** | **Trade Debt** | | **2817.50** |
| **Empire Merchant 16 Bridgewater Street Brooklyn, NY 11222** | **Empire Merchant Attn: Marina Ynoa 16 Bridgewater Street Brooklyn, NY 11222 (718) 383-5500 Ext 9945** | **Trade Debt** | | **2437.54** |

B4 (Official Form 4) (12/07) - Cont.

In re    **52 West 13th Street P, LLC**                                      Case No. _____
                        Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) | (2) | (3) | (4) | (5) |
|-----|-----|-----|-----|-----|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| Harbor Linen<br>PO Box 3510<br>Cherry Hill, NJ 08002 | Harbor Linen<br>Attn: Seth Bloch<br>PO Box 3510<br>Cherry Hill, NJ 08002<br>(800) 257-7858 Ext 4295 | Trade Debt | | 3100.58 |
| Justin Kellerman<br>52 West 13th Street<br>New York, NY 10011 | 52 West 13th Street<br>Attn: JustinKellerman<br>New York, NY 10011<br>(631) 767-8222 | Expense Reimbursement | | 9681.35 |
| Hotel Lab Consultants<br>1239 Alton Road<br>Miami Beach, FL 33139 | Hotel Lab Consultants<br>Attn: Martin Larsson<br>1239 Alton Road<br>Miami Beach, FL 33139<br>(646) 673-2130 | Trade Debt | | 1400.00 |
| La Bottega Dell'Albergo<br>264 W 40th Street, STE 201<br>New York, NY 10018 | La Bottega Dell'Albergo<br>Attn: Rebecca Matura<br>264 W 40th Street, STE 201<br>New York, NY 10018<br>(516) 626-3360 | Trade Debt | | 4274.43 |
| Lin Remodeling Inc.<br>1117 Stonegate Road<br>Shrub Oak, NY | Lin Remodeling Inc.<br>Attn: Igor Lukashin<br>1117 Stonegate Road<br>Shrub Oak, NY 10588<br>(914) 860-5194 | Construction | | 2500.00 |
| Martha A.Parker<br>52 West 13th Street<br>New York, NY 10011 | 52 West 13th Street<br>Attn: Martha A.Parker<br>New York, NY 10011<br>(212) 375-1300 | Expense Reimbursement | | 2077.07 |
| Martin Scott Wines<br>PO Box 9003<br>New Hyde Park, NY  11040 | Martin Scott Wines<br>Attn: Valerie Bellmer<br>PO Box 9003<br>New Hyde Park, NY  11040<br>(201) 445-0620 ext 2457 | Trade Debt | | 1800.00 |
| Metal Brite Service<br>PO Box 26032<br>New York, NY 10087 | Metal Brite Service<br>Attn: John Shea<br>PO Box 26032<br>New York, NY 10087<br>(212) 714-0004 | Trade Debt | | 3810.63 |
| Ritz Cleaners<br>3030 Emmons Ave, sTE 5B<br>Brooklyn, NY 11222 | Ritz Cleaners<br>Attn: Maria<br>3030 Emmons Ave, Ste 5B<br>Brooklyn, NY 11222<br>(718) 666-7078 | Trade Debt | | 2753.89 |
| Rotavele Elevator<br>414 Seneca Avenue<br>Ridgewood, NY 11385 | Rotavele Elevator<br>Attn: Customer Service<br>414 Seneca Avenue<br>Ridgewood, NY 11385<br>(718) 386-3000 | Trade Debt | | 2450.85 |

B4 (Official Form 4) (12/07) - Cont.

In re   **52 West 13th Street P, LLC** _____   Case No. _____
                    Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **Sebastian Setteducate**<br>**144 Toledo Street**<br>**Farmingdale, NY 11735** | **Sebastian Setteducate**<br>**Attn: Jennifer Lingen**<br>**144 Toledo Street**<br>**Farmingdale, NY 11735**<br>**(631) 755-1112** | **Trade Debt** | | **3000.00** |
| **The Lobster Place**<br>**75 Ninth Ave**<br>**New York, NY 10011** | **The Lobster Place**<br>**Attn: Rosemary Byrd**<br>**75 Ninth Ave**<br>**New York, NY 10011**<br>**(646) 398-5043** | **Trade Debt** | | **2322.78** |
| **Winebow**<br>**236 W 26th Street, STE 401**<br>**New York, NY 10001** | **Winebow**<br>**Attn: Valerie Bellmer**<br>**236 W 26th Street, STE 401**<br>**New York, NY 10001**<br>**(201) 445-0620 ext 2457** | **Trade Debt** | | **2404.50** |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Manager and Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date   **August 28, 2015** _____        Signature   **/s/ Christopher La Mack** _____
                                                                    **Christopher La Mack**
                                                                    **Authorized Representative**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**Schedule 3**

Pursuant to Local Rule 1007-2(a)(5), the five (5) largest secured claims are attached.

B6D (Official Form 6D) (12/07)

In re    **33 Peck Slip Acquisition LLC**
_____,    Case No. _____
                              Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>**33 Peck Slip Hotel Capital LLC (UBS)**<br>**10 State House, 15th Floor**<br>**Hartford, CT 06103** | X | - | **On or about 03/14/14**<br><br>**Loan Agreement and Related Documents**<br><br>**33 Peck Slip**<br>**New York, NY**<br><br>Value $               **37,100,000.00** | | | | 30,682,075.00 | 0.00 |
| Account No.<br><br><br><br><br> | | | <br><br><br><br>Value $ | | | | | |
| Account No.<br><br><br><br><br> | | | <br><br><br><br>Value $ | | | | | |
| Account No.<br><br><br><br><br> | | | <br><br><br><br>Value $ | | | | | |

|  | | | |
|---|---|---|---|
| __0__ continuation sheets attached | Subtotal<br>(Total of this page) | 30,682,075.00 | 0.00 |
| | Total<br>(Report on Summary of Schedules) | 30,682,075.00 | 0.00 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re    **36 West 38th Street LLC**                                          ,    Case No. _____
                          Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | | |
| Account No. | | | | On or about 10/17/13 | | | | | |
| **36 West 38th St Hotel Cap. LLC** c/o UBS Realty Investors 242 Trumbull Street Hartford, CT 06103 | X | - | | **Loan Agreement and Related Documents** **36 West 38th Street** **New York, NY** | | | | | |
| | | | | Value $            **25,500,000.00** | | | | **19,138,752.74** | **0.00** |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |

| | | |
|---|---|---|
| **0** continuation sheets attached | Subtotal (Total of this page) | **19,138,752.74** | **0.00** |
| | Total (Report on Summary of Schedules) | **19,138,752.74** | **0.00** |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                                            Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re   **Gemini 37 West 24th Street MT, LLC**                                    Case No. _____

                                                          ,
                                                    Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | Codebtor | Husband, Wife, Joint, or Community H/W/J/C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | Contingent | Unliquidated | Disputed | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>**SBNP I BOA LLC**<br>**One Financial Plaza, 18th FL**<br>**Hartford, CT 06103** | | - | **Principal Loan Agreement and Related Documents**<br><br>**37 West 24th St.**<br>**New York, NY** | | | | | |
| | | | Value $          **57,000,000.00** | | | | **33,594,943.61** | **0.00** |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| **_0_** continuation sheets attached | | | Subtotal<br>(Total of this page) | | | | 33,594,943.61 | 0.00 |
| | | | Total<br>(Report on Summary of Schedules) | | | | 33,594,943.61 | 0.00 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                     Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re   **52 West 13th P, LLC**                                                    ,   Case No. _____
                                    Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **x3105**<br><br>**CEMF 1 USB LLC**<br>**c/o Cornerstone RE Advisors**<br>**One Financial Plaza, 18th Fl.**<br>**Hartford, CT 06103** | X | - | On or about 06/25/2013<br><br>**Loan Agreement and Related Documents**<br><br>**52 West 13th Street**<br>**New York, NY** | | | | | |
| | | | Value $            **78,000,000.00** | | | | 50,771,788.19 | 0.00 |
| Account No.<br><br>**Polar Bear of NY**<br>**2644 N. Jerusalem Rd.**<br>**Bellmore, NY 11710** | | - | Trade Debt<br><br>**Restaurant equipment** | | | X | | |
| | | | Value $                **136.54** | | | | 136.54 | 136.54 |
| Account No.<br><br>**US Foods Inc.**<br>**1051 Amboy Ave**<br>**Perth Amboy, NJ 08861** | | - | UCC<br><br>**purchase money security interest in goods, inventory, goods for sale, fixtures** | X | | | | |
| | | | Value $                  **0.00** | | | | 0.00 | 0.00 |
| Account No.<br><br> | | | | | | | | |
| | | | Value $ | | | | | |

| | | |
|---|---|---|
| __0__ continuation sheets attached | Subtotal<br>(Total of this page) | 50,771,924.73 | 136.54 |
| | Total<br>(Report on Summary of Schedules) | 50,771,924.73 | 136.54 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

**Schedule 4**

Pursuant to Local Rule 1007-2(a)(6) the summary of assets and liabilities are attached

B6 Summary (Official Form 6 - Summary) (12/14)

# United States Bankruptcy Court
## Southern District of New York

In re   **36 West 38th Street LLC**

Debtor

Case No. _____

Chapter _____ **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 25,500,000.00 | | |
| B - Personal Property | Yes | 3 | 257,493.00 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 19,138,752.74 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 247,399.04 | |
| G - Executory Contracts and Unexpired Leases | Yes | 4 | | | |
| H - Codebtors | Yes | 1 | | | |
| I -  Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J -  Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 14 | | | |
| Total Assets | | | 25,757,493.00 | | |
| Total Liabilities | | | | 19,386,151.78 | |

69

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

B6 Summary (Official Form 6 - Summary) (12/14)

.

# United States Bankruptcy Court
## Southern District of New York

In re    **33 Peck Slip Acquisition LLC**
_____,
                                    Debtor

Case No. _____

Chapter_____**11**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 37,100,000.00 | | |
| B - Personal Property | Yes | 3 | 1,136,803.95 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 30,682,075.00 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 6 | | 292,417.16 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 5 | | 39,664.11 | |
| G - Executory Contracts and Unexpired Leases | Yes | 3 | | | |
| H - Codebtors | Yes | 1 | | | |
| I -  Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J -  Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 20 | | | |
| Total Assets | | | 38,236,803.95 | | |
| Total Liabilities | | | | 31,014,156.27 | |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

B6 Summary (Official Form 6 - Summary) (12/14)

.

# United States Bankruptcy Court
## Southern District of New York

In re    **Gemini 37 West 24th Street MT, LLC**_____ ,    Case No. _____

                                              Debtor

Chapter_____**11**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 57,000,000.00 | | |
| B - Personal Property | Yes | 4 | 3,745,791.74 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 33,594,944.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 7 | | 335,044.97 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 4 | | 46,132.62 | |
| G - Executory Contracts and Unexpired Leases | Yes | 2 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 20 | | | |
| Total Assets | | | 60,745,791.74 | | |
| Total Liabilities | | | | 33,976,121.59 | |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com            Best Case Bankruptcy

B6 Summary (Official Form 6 - Summary) (12/14)

# United States Bankruptcy Court
## Southern District of New York

In re   **52 West 13th P, LLC**                                    ,          Case No. _____

                                    Debtor

                                                                  Chapter_____**11**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 78,000,000.00 | | |
| B - Personal Property | Yes | 4 | 3,169,080.75 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 50,771,924.73 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 17 | | 449,697.40 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 12 | | 106,671.74 | |
| G - Executory Contracts and Unexpired Leases | Yes | 4 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 40 | | | |
| | Total Assets | | 81,169,080.75 | | |
| | | Total Liabilities | | 51,328,293.87 | |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**Schedule 5**

Pursuant to Local Rule 1007-2(a)(7) the list of the Debtors' members are below.

**Gemini 37 West 24th Street MT LLC**
     Sole Member: Gemini NYC Hotel LLC

**52 West 13th P, LLC**
     Sole Member: 52 West 13th Street Holding LLC

**33 Peck Slip Acquisition LLC**
     Sole Member: 33 Peck Slip Holding LLC

**36 West 38th Street Holding, LLC**
     Sole Member:  36 West 38th Street Holding LLC

**Schedule 6**

Debtors' Property Not in the Debtors' Possession

Local Rule 1007-2(a)(8) requires the Debtors' to list property that is in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditors or any agent for any such entity.

None

**Schedule 7**

Pursuant to Local Rule 1007-2(a)(9), the following lists the property of the premises owned, leased or held under other arrangements from which the Debtors' operate their business.

- Best Western Seaport Hotel, 33 Peck Slip, New York, NY
- Wyndham Flatiron Hotel, 37 West 38th Street, New York, NY
- Jade Greenwich Village Hotel, 52 West 13th Street, New York, NY
- Bryant Park Development Site, located at 36 West 38th Street, New York, NY
- 16740 Birkdale Commons Pkwy, Ste 306, Huntersville, NC 28078

**Schedule 8**

**Location of Debtors' Assets Books and Records**


Pursuant to Local Rule 1007-2(a)(10) the following lists the locations of the Debtors' substantial assets, the location of their books and records, and the nature of the location, and value of any assets held by the Debtors' outside the territorial limited of the United States

**Location of Debtors' Substantial Assets**:

The Debtors' real estate is located at the following locations:

33 Peck Slip, New York, NY 10038
37 West 24th Street, New York, NY 10010
36 West 38th Street, New York, NY 10010
52 West 13th Street, New York, NY 10011


**Location of Books and Records**

The books are records for 33 Peck Slip, 37 West 24th Street and 52 West 13th Street are in the possession of the following:

Stephen Cius
220 Fifth Ave., 13th Floor
New York, NY 10010

BDO
100 Park Ave.
New York, NY 10017


**The books and records for 36 West 38th Street are in the possession of the following**:

William Stelma
16740 Birkdale Commons Pkwy, Ste 306
Huntersville, NC 28078

**There are no assets outside the U.S.**

**Schedule 9**

**Litigation**

Pursuant to Locale Rule l007-2(a)(l1), to the best of the Debtors' knowledge and belief the following is a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their properties where judgement against the Debtors or a seizure of their property may be eminent.

36 West 38th Street LLC

| Caption | Jurisdiction | Nature | Status |
|---------|-------------|--------|--------|
| William Obeid et al. v. Bridgeton Holdings, LLC, et al., Index #: 152596/2015 | Supreme Court of New York | Dispute over Sale of Property | Disputed/pending *Lis Pendens* recorded on or about 3/17/15 |

33 Peck Slip Acquisition, LLC

| Caption | Jurisdiction | Nature | Status |
|---------|-------------|--------|--------|
| William Obeid et al. v. Bridgeton Holdings, LLC, et al. Index #: 152596/2015 | Supreme Court of New York | Dispute over Sale of Property | Disputed/pending *Lis Pendens* recorded on or about 3/17/15 |
| Sandra Schindler v. 33 Peck Slip Acquisition, LLC, Case No. 157951-2015 | Supreme Court of New York | Slip and Fall | Pending |

Gemini 37 West 24th Street MT, LLC

| Caption | Jurisdiction | Nature | Status |
|---|---|---|---|
| William Obeid et al. v. Bridgeton Holdings, LLC, et al. Index #: 152596/2015 | Supreme Court of New York | Dispute over Sale of Property | Disputed/pending *Lis Pendens* recorded on or about 3/17/15 |

52 West 13th P, LLC

| Caption | Jurisdiction | Nature | Status |
|---|---|---|---|
| William Obeid et al. v. Bridgeton Holdings, LLC, et al. Index #: 152596/2015 | Supreme Court of New York | Dispute over Sale of Property | Disputed/pending *Lis Pendens* recorded on or about 3/17/15 |
| Rafael Valera v. 52 West 13th P LLC, Case No. 0023092/2012 | Supreme Court of New York | Litigation | Pending |
| Karen Saribekov v. 52 West 13th P LLC, Case No. 052452/2012 | Supreme Court of New York | Litigation | Pending |
| Kenneth Brandman v. 52 West 13th P LLC, Case No. 0152452/2012 | Supreme Court of New York | Litigation | Pending |

Schedule 10

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who comprise the Debtors' existing senior management, a description of their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

### Gemini 37 West 24th Street MT LLC

| Name and Position | Dates of Employment | Responsibilities and Experience |
|---|---|---|
| Carlton Yee, General Manager | Aug. 4, 2008 to Present | Responsible for all operations of hotel. Mr. Yee has extensive hotel management experience |

### 52 West 13th P, LLC

| Name and Position | Dates of Employment | Responsibilities and Experience |
|---|---|---|
| Justin Kellerman, General Manager | July 4, 2014 to Present | Responsible for all operations of the hotel. Previously managed other boutique hotel properties in New York City |

### 33 Peck Slip Acquisition LLC

| Name and Position | Dates of Employment | Responsibilities and Experience |
|---|---|---|
| Zulfiqar Mohammad, General Manager | March 16, 2015 to Present | Responsible for all operations of hotel. Mr. Mohammad has extensive hotel management experience. |

### 36 West 38th Street LLC

| Name and Position | Dates of Employment | Responsibilities and Experience |
|---|---|---|
| N/A – raw land | N/A | N/A |

Schedule 11
Payroll

Pursuant to Local Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of monthly payroll to the Debtors' employees (not including officers, directors, and stockholders) and the estimated amount to be paid to officers, stockholders, directors and business consultants retained by the Debtors for the 30 day period following the filing of the chapter 11 petition.

### 33 Peck Slip Acquisition, LLC

| | |
|---|---|
| Payments to Employees (Not Including Officers, Directors and Stockholders) | $49,398.05 (wages)<br>$13,900 (taxes) |
| Payments to Officers, Stockholders, and Directors | $0 |
| Payments to Financial and Business Consultants | $0 |

### 37 West 24th Street, LLC

| | |
|---|---|
| Payments to Employees (Not Including Officers, Directors and Stockholders) | $101,611.55 (wages)<br>$53,000 (taxes) |
| Payments to Officers, Stockholders, and Directors | $0 |
| Payments to Financial and Business Consultants | $0 |

### 52 West 13th P, LLC

| | |
|---|---|
| Payments to Employees (Not Including Officers, Directors and Stockholders) | $236,172.01 (wages)<br>$93,000 (taxes) |
| Payments to Officers, Stockholders, and Directors | $0 |
| Payments to Financial and Business Consultants | $0 |

### 36 West 38th Street, LLC

| | |
|---|---|
| Payments to Employees (Not Including Officers, Directors and Stockholders) | N/A |
| Payments to Officers, Stockholders, and Directors | $0 |
| Payments to Financial and Business Consultants | $0 |

Schedule 12
List of Estimated Case Receipts and Disbursements

Pursuant to Local Rule 1007-2(b)(3), the following provides, for the 30-day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gains or loss and obligations and receivable expected to accrue that remain unpaid, other than professional fees.

See attached

33 Peck Slip Acquisition LLC
26 Week Budget

**33 Peck Slip Acquisition LLC - 26 Weeks Cash Flow**

| For Week Ending | Week 1 Budget 9/7/2015 | Week 2 Budget 9/14/2015 | Week 3 Budget 9/21/2015 | Week 4 Budget 9/28/2015 | Week 5 Budget 10/5/2015 | Week 6 Budget 10/12/2015 | Week 7 Budget 10/19/2015 | Week 8 Budget 10/26/2015 | Week 9 Budget 11/2/2015 | Week 10 Budget 11/9/2015 | Week 11 Budget 11/16/2015 | Week 12 Budget 11/23/2015 | Week 13 Budget 11/30/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance (Book) | | | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | $1,150,000 | | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | | | |
| Revenue from Sales 1.) | $83,538 | $82,564 | $96,540 | $91,469 | $90,966 | $98,376 | $90,782 | $97,850 | $88,523 | $89,629 | $86,208 | $84,434 | $61,148 |
| Other Receipts Sales Tax | $8,601 | $8,601 | $8,515 | $9,755 | $9,305 | $9,260 | $9,918 | $9,244 | $9,871 | $9,043 | $9,142 | $8,838 | $8,680 |
| Occupancy Tax | $6,490 | $6,490 | $6,433 | $7,254 | $6,956 | $6,926 | $7,362 | $6,915 | $7,331 | $6,783 | $6,848 | $6,647 | $6,542 |
| **Total Receipts to Debtors** | **$98,629** | **$97,655** | **$111,488** | **$108,478** | **$107,226** | **$114,563** | **$108,062** | **$114,009** | **$105,724** | **$105,456** | **$102,198** | **$99,918** | **$76,371** |
| Other | | | | | | | | | | | | | |
| **Total Cash Inflow** | **$98,629** | **$97,655** | **$111,488** | **$108,478** | **$107,226** | **$114,563** | **$108,062** | **$114,009** | **$105,724** | **$105,456** | **$102,198** | **$99,918** | **$76,371** |
| **Cash Disbursements:** | | | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | | | |
| Payroll Compensation 2.) | $9,381 | $9,381 | $9,381 | $9,381 | $9,605 | $9,605 | $9,605 | $9,605 | $9,075 | $9,075 | $9,075 | $9,075 | $9,075 |
| Payroll Taxes, Medicare | $3,461 | $3,461 | $3,461 | $3,461 | $3,543 | $3,543 | $3,543 | $3,543 | $3,348 | $3,348 | $3,348 | $3,348 | $3,348 |
| Employee Medical Benefits | $0 | $10,500 | $0 | $0 | $0 | $0 | $10,500 | $0 | $0 | $0 | $10,500 | $0 | $0 |
| Overhead 3.) | $23,731 | $23,731 | $23,731 | $23,731 | $27,940 | $27,940 | $27,940 | $27,940 | $20,877 | $20,877 | $20,877 | $20,877 | $20,877 |
| Insurance 4.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales And Occupancy Taxes | $0 | $0 | $125,372 | $0 | $0 | $0 | $35,472 | $0 | $0 | $0 | $0 | $47,598 | $0 |
| Real Estate Tax 5.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest To Secured Lender | $163,394 | $0 | $0 | $0 | $159,228 | $0 | $0 | $0 | $163,394 | $0 | $0 | $0 | $159,228 |
| Subtotal | $199,967 | $47,073 | $161,945 | $36,573 | $200,316 | $41,088 | $87,060 | $41,088 | $196,695 | $33,301 | $43,801 | $80,899 | $192,529 |
| **Professional Fees** | | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | | | |
| Accountants | | | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | | | |
| Sub-Total All Professional Fees 6.) | $50,000 | | | | $50,000 | | | | $50,000 | | | | |
| US Trustee - Quarterly Fees | | | | | | $4,875 | | | | | | | |
| Subtotal | $50,000 | $0 | $0 | $0 | $50,000 | $4,875 | $0 | $0 | $50,000 | $0 | $0 | $0 | $0 |
| **Total Disbursements** | **$249,967** | **$47,073** | **$161,945** | **$36,573** | **$250,316** | **$45,963** | **$87,060** | **$41,088** | **$246,695** | **$33,301** | **$43,801** | **$80,899** | **$192,529** |
| **Cash Surplus/(Deficit)** | **-$151,338** | **$50,582** | **-$50,457** | **$71,905** | **-$143,090** | **$68,600** | **$21,002** | **$72,921** | **-$140,970** | **$72,155** | **$58,397** | **$19,020** | **-$116,158** |
| **Ending Cash Balance** | **$998,662** | **$1,049,244** | **$998,787** | **$1,070,691** | **$927,602** | **$996,202** | **$1,017,204** | **$1,090,125** | **$949,155** | **$1,021,309** | **$1,079,706** | **$1,098,725** | **$982,567** |

1. Includes Room Sales and Other Income. Hotel does not have a Food and Beverage Outlet.
2. Includes Salaries and Wages of Hotel Staff and does not include any Insider Compensation.
3. Overhead Expenses include Operating Supplies, Utilities, Commissions, Sales Expenses, etc.
4. Insurance has been Prepaid. Next annual renewal is May, 2016.
5. Real Estate Taxes are prepaid semi-annually and due January 1st and July 1st for the following six month period.
6. Reserved until payment is allowed and authorized by the bankruptcy court.

**33 Peck Slip Acquisition LLC - 26 Weeks Cash Flow**

| | Week 14 Budget 12/7/2015 | Week 15 Budget 12/14/2015 | Week 16 Budget 12/21/2015 | Week 17 Budget 12/28/2015 | Week 18 Budget 1/4/2016 | Week 19 Budget 1/11/2016 | Week 20 Budget 1/18/2016 | Week 21 Budget 1/25/2016 | Week 22 Budget 2/1/2016 | Week 23 Budget 2/8/2016 | Week 24 Budget 2/15/2016 | Week 25 Budget 2/22/2016 | Week 26 Budget 2/29/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **For Week Ending** | | | | | | | | | | | | | |
| Beginning Cash Balance (Book) | | | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | | | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | | | |
| Revenue from Sales  1.) | $79,812 | $88,241 | $62,916 | $48,414 | $89,308 | $55,879 | $55,879 | $55,879 | $55,879 | $60,986 | $60,986 | $60,986 | $60,986 |
| Other Receipts Sales Tax | $6,614 | $8,270 | $9,018 | $6,771 | $5,484 | $9,113 | $6,146 | $6,146 | $6,146 | $6,146 | $6,600 | $6,600 | $6,600 |
| Occupancy Tax | $5,174 | $6,271 | $6,766 | $5,278 | $4,426 | $6,829 | $4,865 | $4,865 | $4,865 | $4,865 | $5,165 | $5,165 | $5,165 |
| **Total Receipts to Debtors** | **$91,600** | **$102,782** | **$78,701** | **$60,463** | **$99,218** | **$71,821** | **$66,890** | **$66,890** | **$66,890** | **$71,998** | **$72,751** | **$72,751** | **$72,751** |
| Other | | | | | | | | | | | | | |
| **Total Cash Inflow** | **$91,600** | **$102,782** | **$78,701** | **$60,463** | **$99,218** | **$71,821** | **$66,890** | **$66,890** | **$66,890** | **$71,998** | **$72,751** | **$72,751** | **$72,751** |
| **Cash Disbursements:** | | | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | | | |
| Payroll Compensation  2.) | $9,732 | $9,732 | $9,732 | $9,732 | $9,075 | $9,291 | $9,291 | $9,291 | $9,291 | $9,622 | $9,622 | $9,622 | $9,622 |
| Payroll Taxes, Medicare | $3,590 | $3,590 | $3,590 | $3,590 | $3,348 | $3,428 | $3,428 | $3,428 | $3,428 | $3,550 | $3,550 | $3,550 | $3,550 |
| Employee Medical Benefits | $0 | $10,500 | $0 | $0 | $0 | $0 | $10,500 | $0 | $0 | $0 | $10,500 | $0 | $0 |
| Overhead  3.) | $23,928 | $23,928 | $23,928 | $23,928 | $20,877 | $19,322 | $19,322 | $19,322 | $19,322 | $14,413 | $14,413 | $14,413 | $14,413 |
| Insurance  4.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales And Occupancy Taxes | $0 | $0 | $149,422 | $0 | $0 | $0 | $0 | $30,673 | $0 | $0 | $0 | $102,320 | $0 |
| Real Estate Tax  5.) | $0 | $0 | $0 | $248,246 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest To Secured Lender | $0 | $0 | $0 | $163,394 | $0 | $0 | $0 | $0 | $163,394 | $0 | $0 | $0 | $149,299 |
| Subtotal | $37,251 | $47,751 | $186,673 | $448,891 | $33,301 | $32,041 | $42,541 | $62,714 | $195,435 | $27,585 | $38,085 | $129,905 | $176,884 |
| **Professional Fees** | | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | | | |
| Accountants | | | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | | | |
| Sub-Total All Professional Fees  6.) | $50,000 | | | | $50,000 | | | | $50,000 | | | | $50,000 |
| US Trustee - Quarterly Fees | | | | | | $4,875 | | | | | | | |
| Subtotal | $50,000 | $0 | $0 | $0 | $50,000 | $4,875 | $0 | $0 | $50,000 | $0 | $0 | $0 | $50,000 |
| **Total Disbursements** | **$87,251** | **$47,751** | **$186,673** | **$448,891** | **$83,301** | **$36,916** | **$42,541** | **$62,714** | **$245,435** | **$27,585** | **$38,085** | **$129,905** | **$226,884** |
| **Cash Surplus/(Deficit)** | **$4,350** | **$55,031** | **-$107,972** | **-$388,428** | **$15,917** | **$34,905** | **$24,349** | **$4,176** | **-$178,545** | **$44,412** | **$34,666** | **-$57,154** | **-$154,133** |
| **Ending Cash Balance** | **$986,917** | **$1,041,948** | **$933,977** | **$545,549** | **$561,466** | **$596,370** | **$620,719** | **$624,895** | **$446,350** | **$490,762** | **$525,428** | **$468,274** | **$314,140** |

52 West 13th P, LLC
26 Week Budget

**26 Weeks Cash Flow - 52 West 13th P, LLC**

| For Week Ending | Week 1 Budget 9/7/2015 | Week 2 Budget 9/14/2015 | Week 3 Budget 9/21/2015 | Week 4 Budget 9/28/2015 | Week 5 Budget 10/5/2015 | Week 6 Budget 10/12/2015 | Week 7 Budget 10/19/2015 | Week 8 Budget 10/26/2015 | Week 9 Budget 11/2/2015 | Week 10 Budget 11/9/2015 | Week 11 Budget 11/16/2015 | Week 12 Budget 11/23/2015 | Week 13 Budget 11/30/2015 | Week 14 Budget 12/7/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance (Book)** | | | | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | $900,000 | | | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | | | | |
| Revenue from Sales  1.) | $297,109 | $326,249 | $343,352 | $325,315 | $323,525 | $349,882 | $322,874 | $348,008 | $314,837 | $318,773 | $306,605 | $300,294 | $217,476 | $283,856 |
| Other Receipts Sales Tax | $22,953 | $27,555 | $30,142 | $31,660 | $30,059 | $29,900 | $32,239 | $29,842 | $32,073 | $29,129 | $29,478 | $28,398 | $27,838 | $20,488 |
| Occupancy Tax | $14,935 | $19,037 | $20,749 | $21,754 | $20,694 | $20,589 | $22,138 | $20,551 | $22,027 | $20,079 | $20,310 | $19,595 | $19,224 | $14,359 |
| **Total Receipts to Debtors** | **$334,997** | **$372,842** | **$394,243** | **$378,729** | **$374,278** | **$400,371** | **$377,251** | **$398,401** | **$368,937** | **$367,980** | **$356,393** | **$348,287** | **$264,539** | **$318,703** |
| Other | | | | | | | | | | | | | | |
| **Total Cash Inflow** | **$334,997** | **$372,842** | **$394,243** | **$378,729** | **$374,278** | **$400,371** | **$377,251** | **$398,401** | **$368,937** | **$367,980** | **$356,393** | **$348,287** | **$264,539** | **$318,703** |
| **Cash Disbursements:** | | | | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | | | | |
| Payroll Compensation  2.) | $59,380 | $59,380 | $59,380 | $59,380 | $60,796 | $60,796 | $60,796 | $60,796 | $57,445 | $57,445 | $57,445 | $57,445 | $57,445 | $61,601 |
| Payroll Taxes, Medicare | $23,041 | $23,041 | $23,041 | $23,041 | $23,590 | $23,590 | $23,590 | $23,590 | $22,290 | $22,290 | $22,290 | $22,290 | $22,290 | $23,902 |
| Employee Medical Benefits | $0 | $4,400 | $0 | $0 | $0 | $0 | $4,400 | $0 | $0 | $0 | $4,400 | $0 | $0 | $0 |
| Cost of Food and Beverage Sold | $10,500 | $10,500 | $10,500 | $10,500 | $12,639 | $12,639 | $12,639 | $12,639 | $13,047 | $13,047 | $13,047 | $13,047 | $13,047 | $14,182 |
| Overhead  3.) | $36,789 | $36,789 | $36,789 | $36,789 | $43,314 | $43,314 | $43,314 | $43,314 | $32,366 | $32,366 | $32,366 | $32,366 | $32,366 | $37,095 |
| Insurance  4.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales And Occupancy Taxes | $0 | $0 | $303,336 | $0 | $0 | $0 | $112,310 | $0 | $0 | $0 | $0 | $154,112 | $0 | $0 |
| Real Estate Tax  5.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest To Secured Lender | $271,788 | $0 | $0 | $0 | $263,021 | $0 | $0 | $0 | $271,788 | $0 | $0 | $0 | $263,021 | $0 |
| Reserve For Replacement | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $148,220 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subtotal | $401,498 | $134,110 | $433,046 | $129,710 | $403,360 | $140,339 | $257,049 | $288,559 | $396,936 | $125,148 | $129,548 | $279,260 | $388,169 | $136,781 |
| **Professional Fees** | | | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | | | | |
| Accountants | | | | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | | | | |
| Sub-Total All Professional Fees  6.) | $50,000 | | | | $50,000 | | | | $50,000 | | | | | $50,000 |
| US Trustee - Quarterly Fees | | | | | | $9,750 | | | | | | | | |
| Subtotal | $50,000 | $0 | $0 | $0 | $50,000 | $9,750 | $0 | $0 | $50,000 | $0 | $0 | $0 | $0 | $50,000 |
| **Total Disbursements** | **$451,498** | **$134,110** | **$433,046** | **$129,710** | **$453,360** | **$150,089** | **$257,049** | **$288,559** | **$446,936** | **$125,148** | **$129,548** | **$279,260** | **$388,169** | **$186,781** |
| **Cash Surplus/(Deficit)** | **-$116,501** | **$238,732** | **-$38,803** | **$249,019** | **-$79,082** | **$250,282** | **$120,202** | **$109,842** | **-$77,998** | **$242,833** | **$226,846** | **$69,028** | **-$123,630** | **$131,922** |
| **Ending Cash Balance** | **$783,499** | **$1,022,231** | **$983,428** | **$1,232,447** | **$1,153,365** | **$1,403,647** | **$1,523,849** | **$1,633,691** | **$1,555,692** | **$1,798,525** | **$2,025,371** | **$2,094,399** | **$1,970,769** | **$2,102,691** |

1. Includes Room, Food and Beverage Sales and Other Income.
2. Includes Salaries and Wages of Hotel Staff and does not include any Insider Compensation.
3. Overhead Expenses include Operating Supplies, Utilities, Commissions, Sales Expenses, etc.
4. Insurance has been Prepaid.  Next annual renewal is May, 2016.
5. Real Estate Taxes are prepaid semi-annually and due January 1st and July 1st for the following six month period.
6. Reserved until payment is allowed and authorized by the bankruptcy court.

**26 Weeks Cash Flow - 52 West 13th P, LLC**

| For Week Ending | Week 15 Budget 12/14/2015 | Week 16 Budget 12/21/2015 | Week 17 Budget 12/28/2015 | Week 18 Budget 1/4/2016 | Week 19 Budget 1/11/2016 | Week 20 Budget 1/18/2016 | Week 21 Budget 1/25/2016 | Week 22 Budget 2/1/2016 | Week 23 Budget 2/8/2016 | Week 24 Budget 2/15/2016 | Week 25 Budget 2/22/2016 | Week 26 Budget 2/29/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance (Book) | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | | |
| Revenue from Sales 1.) | $313,834 | $223,767 | $172,187 | $317,628 | $198,737 | $198,737 | $198,737 | $198,737 | $216,902 | $216,902 | $216,902 | $216,902 |
| Other Receipts Sales Tax | $26,379 | $29,040 | $21,046 | $16,469 | $29,377 | $18,825 | $18,825 | $18,825 | $18,825 | $20,437 | $20,437 | $20,437 |
| Occupancy Tax | $18,259 | $20,020 | $14,728 | $11,698 | $20,243 | $13,258 | $13,258 | $13,258 | $13,258 | $14,325 | $14,325 | $14,325 |
| **Total Receipts to Debtors** | **$358,472** | **$272,826** | **$207,962** | **$345,795** | **$248,356** | **$230,820** | **$230,820** | **$230,820** | **$248,985** | **$251,665** | **$251,665** | **$251,665** |
| Other | | | | | | | | | | | | |
| **Total Cash Inflow** | **$358,472** | **$272,826** | **$207,962** | **$345,795** | **$248,356** | **$230,820** | **$230,820** | **$230,820** | **$248,985** | **$251,665** | **$251,665** | **$251,665** |
| | | | | | | | | | | | | |
| **Cash Disbursements:** | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | | |
| Payroll Compensation 2.) | $61,601 | $61,601 | $61,601 | $57,445 | $58,813 | $58,813 | $58,813 | $58,813 | $60,906 | $60,906 | $60,906 | $60,906 |
| Payroll Taxes, Medicare | $23,902 | $23,902 | $23,902 | $22,290 | $22,821 | $22,821 | $22,821 | $22,821 | $23,633 | $23,633 | $23,633 | $23,633 |
| Employee Medical Benefits | $4,400 | $0 | $0 | $0 | $0 | $5,200 | $0 | $0 | $0 | $4,400 | $0 | $0 |
| Cost of Food and Beverage Sold | $14,182 | $14,182 | $14,182 | $13,047 | $12,166 | $12,166 | $12,166 | $12,166 | $14,439 | $14,439 | $14,439 | $14,439 |
| Overhead 3.) | $37,095 | $37,095 | $37,095 | $32,366 | $29,954 | $29,954 | $29,954 | $29,954 | $22,344 | $22,344 | $22,344 | $22,344 |
| Insurance 4.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales And Occupancy Taxes | $0 | $376,525 | $0 | $0 | $0 | $0 | $96,953 | $0 | $0 | $0 | $102,320 | $0 |
| Real Estate Tax 5.) | $0 | | $725,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest To Secured Lender | $0 | $0 | $271,788 | $0 | $0 | $0 | $0 | $271,788 | $0 | $0 | $0 | $245,486 |
| Reserve For Replacement | $0 | $0 | $0 | $0 | $0 | $170,644 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subtotal | $141,181 | $513,306 | $1,133,569 | $125,148 | $123,754 | $299,598 | $220,707 | $395,542 | $121,323 | $125,723 | $223,643 | $366,809 |
| | | | | | | | | | | | | |
| **Professional Fees** | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | | |
| Accountants | | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | | |
| Sub-Total All Professional Fees 6.) | | | | $50,000 | | | | $50,000 | | | | $50,000 |
| | | | | | | | | | | | | |
| US Trustee - Quarterly Fees | | | | | $9,750 | | | | | | | |
| | | | | | | | | | | | | |
| Subtotal | $0 | $0 | $0 | $50,000 | $9,750 | $0 | $0 | $50,000 | $0 | $0 | $0 | $50,000 |
| **Total Disbursements** | **$141,181** | **$513,306** | **$1,133,569** | **$175,148** | **$133,504** | **$299,598** | **$220,707** | **$445,542** | **$121,323** | **$125,723** | **$223,643** | **$416,809** |
| | | | | | | | | | | | | |
| **Cash Surplus/(Deficit)** | **$217,291** | **-$240,480** | **-$925,607** | **$170,647** | **$114,852** | **-$68,779** | **$10,112** | **-$214,723** | **$127,662** | **$125,942** | **$28,022** | **-$165,144** |
| **Ending Cash Balance** | **$2,319,982** | **$2,079,503** | **$1,153,896** | **$1,324,543** | **$1,439,395** | **$1,370,616** | **$1,380,728** | **$1,166,006** | **$1,293,668** | **$1,419,609** | **$1,447,631** | **$1,282,486** |

Gemini 37 West 24th Street MT, LLC
26 Week Budget

**26 Weeks Cash Flow**
**Gemini 37 West 24th Street MT, LLC**

| For Week Ending | Week 1 Budget 9/7/2015 | Week 2 Budget 9/14/2015 | Week 3 Budget 9/21/2015 | Week 4 Budget 9/28/2015 | Week 5 Budget 10/5/2015 | Week 6 Budget 10/12/2015 | Week 7 Budget 10/19/2015 | Week 8 Budget 10/26/2015 | Week 9 Budget 11/2/2015 | Week 10 Budget 11/9/2015 | Week 11 Budget 11/16/2015 | Week 12 Budget 11/23/2015 | Week 13 Budget 11/30/2015 | Week 14 Budget 12/7/2015 | Week 15 Budget 12/14/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance (Book)** | | | | | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | $2,400,000 | , | | | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | | | | | |
| Revenue from Sales 1.) | $136,670 | $151,163 | $160,506 | $152,551 | $136,000 | $156,051 | $148,522 | $160,084 | $144,825 | $146,636 | $141,038 | $138,135 | $100,039 | $130,574 | $144,364 |
| Other Revenues | | | | | | | | | | | | | | | |
| Other Receipts Sales Tax | $13,316 | $13,316 | $14,603 | $15,432 | $14,726 | $13,257 | $15,037 | $14,368 | $15,394 | $14,040 | $14,201 | $13,704 | $13,447 | $10,065 | $12,775 |
| Occupancy Tax | $9,611 | $9,611 | $10,463 | $11,012 | $10,544 | $9,572 | $10,750 | $10,308 | $10,987 | $10,090 | $10,197 | $9,868 | $9,697 | $7,459 | $9,253 |
| Total Receipts to Debtors | $159,598 | $174,091 | $185,572 | $178,995 | $161,270 | $178,880 | $174,309 | $184,760 | $171,206 | $170,766 | $165,436 | $161,707 | $123,183 | $148,099 | $166,392 |
| Other | | $8,200 | | | $8,200 | | | | $8,200 | | | | | $8,200 | |
| Total Cash Inflow | $159,598 | $182,291 | $185,572 | $178,995 | $169,470 | $178,880 | $174,309 | $184,760 | $179,406 | $170,766 | $165,436 | $161,707 | $123,183 | $156,299 | $166,392 |
| **Cash Disbursements:** | | | | | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | | | | | |
| Payroll Compensation 2.) | $51,067 | $0 | $51,067 | $0 | $51,676 | $0 | $52,284 | $0 | $50,844 | $0 | $49,403 | $0 | $49,403 | $0 | $52,977 |
| Payroll Taxes, Medicare | $25,533 | $0 | $25,533 | $0 | $26,142 | $0 | $26,142 | $0 | $24,701 | $0 | $24,701 | $0 | $24,701 | $0 | $26,488 |
| Employee Medical Benefits | $0 | $4,400 | $0 | $0 | $0 | $0 | $0 | $4,400 | $0 | $0 | $0 | $4,400 | $0 | $0 | $4,400 |
| Overhead 3.) | $36,789 | $36,789 | $36,789 | $36,789 | $43,314 | $43,314 | $43,314 | $43,314 | $32,366 | $32,366 | $32,366 | $32,366 | $32,366 | $37,095 | $37,095 |
| Insurance 4.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales And Occupancy Taxes | $0 | $0 | $139,535 | $0 | $0 | $0 | $56,668 | $0 | $0 | $0 | $0 | $72,820 | $0 | $0 | $0 |
| Real Estate Tax 5.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest To Secured Lender | $143,912 | $0 | $0 | $0 | $139,270 | $0 | $0 | $0 | $143,912 | $0 | $0 | $0 | $139,270 | $0 | $0 |
| Reserve For Replacement | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $148,220 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subtotal | $257,301 | $41,189 | $252,924 | $36,789 | $260,402 | $43,314 | $182,808 | $191,534 | $251,822 | $32,366 | $110,869 | $105,186 | $245,739 | $37,095 | $120,960 |
| **Professional Fees** | | | | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | | | | | |
| Accountants | | | | | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | | | | | |
| Sub-Total All Professional Fees 6.) | $50,000 | | | | $50,000 | | | | $50,000 | | | | | $50,000 | |
| US Trustee - Quarterly Fees | | | | | | | $4,875 | | | | | | | | |
| Subtotal | $50,000 | $0 | $0 | $0 | $50,000 | $0 | $4,875 | $0 | $50,000 | $0 | $0 | $0 | $0 | $50,000 | $0 |
| **Total Disbursements** | $307,301 | $41,189 | $252,924 | $36,789 | $310,402 | $43,314 | $187,683 | $191,534 | $301,822 | $32,366 | $110,869 | $105,186 | $245,739 | $87,095 | $120,960 |
| **Cash Surplus/(Deficit)** | -$147,703 | $141,101 | -$67,352 | $142,205 | -$140,931 | $135,566 | -$13,375 | -$6,774 | -$122,416 | $138,401 | $54,567 | $56,522 | -$122,556 | $69,203 | $45,432 |
| **Ending Cash Balance** | $2,252,297 | $2,393,398 | $2,326,046 | $2,468,251 | $2,327,320 | $2,462,885 | $2,449,511 | $2,442,736 | $2,320,320 | $2,458,721 | $2,513,288 | $2,569,809 | $2,447,253 | $2,516,457 | $2,561,889 |

1. Includes Room Sales, Restaurant Lease and Other Income. Hotel does not have a Food and Beverage Outlet.
2. Includes Salaries and Wages of Hotel Staff and does not include any Insider Compensation.
3. Overhead Expenses include Operating Supplies, Utilities, Commissions, Sales Expenses, etc.
4. Insurance has been Prepaid. Next annual renewal is May, 2016.
5. Real Estate Taxes are prepaid semi-annually and due January 1st and July 1st for the following six month period.
6. Reserved until payment is allowed and authorized by the bankruptcy court.

**26 Weeks Cash Flow**
**Gemini 37 West 24th Street MT, LLC**

| For Week Ending | Week 16 Budget 12/21/2015 | Week 17 Budget 12/28/2015 | Week 18 Budget 1/4/2016 | Week 19 Budget 1/11/2016 | Week 20 Budget 1/18/2016 | Week 21 Budget 1/25/2016 | Week 22 Budget 2/1/2016 | Week 23 Budget 2/8/2016 | Week 24 Budget 2/15/2016 | Week 25 Budget 2/22/2016 | Week 26 Budget 2/29/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance (Book)** | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | |
| Revenue from Sales  1.) | $102,933 | $79,206 | $146,109 | $91,419 | $91,419 | $91,419 | $91,419 | $99,775 | $99,775 | $99,775 | $99,775 |
| Other Revenues | | | | | | | | | | | |
| Other Receipts Sales Tax | $13,999 | $10,322 | $8,217 | $14,154 | $9,300 | $9,300 | $9,300 | $9,300 | $10,042 | $10,042 | $10,042 |
| Occupancy Tax | $10,063 | $7,629 | $6,235 | $10,166 | $6,953 | $6,953 | $6,953 | $6,953 | $7,444 | $7,444 | $7,444 |
| **Total Receipts to Debtors** | $126,995 | $97,158 | $160,561 | $115,739 | $107,672 | $107,672 | $107,672 | $116,028 | $117,261 | $117,261 | $117,261 |
| Other | | | $8,200 | | | | | $8,200 | | | |
| **Total Cash Inflow** | $126,995 | $97,158 | $168,761 | $115,739 | $107,672 | $107,672 | $107,672 | $124,228 | $117,261 | $117,261 | $117,261 |
| **Cash Disbursements:** | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | |
| Payroll Compensation  2.) | $0 | $52,977 | $0 | $49,991 | $0 | $50,579 | $0 | $51,479 | $0 | $52,380 | $0 |
| Payroll Taxes, Medicare | $0 | $24,701 | $0 | $25,290 | $0 | $25,290 | $0 | $26,190 | $0 | $26,190 | $0 |
| Employee Medical Benefits | $0 | $0 | $0 | $0 | $5,200 | $0 | $0 | $0 | $4,400 | $0 | $0 |
| Overhead  3.) | $37,095 | $37,095 | $32,366 | $29,954 | $29,954 | $29,954 | $29,954 | $22,344 | $22,344 | $22,344 | $22,344 |
| Insurance  4.) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales And Occupancy Taxes | $297,394 | $0 | $0 | $0 | $0 | $49,162 | $0 | $0 | $0 | $50,272 | $0 |
| Real Estate Tax  5.) | | $530,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest To Secured Lender | $0 | $143,912 | $0 | $0 | $0 | $0 | $143,912 | $0 | $0 | $0 | $129,985 |
| Reserve For Replacement | $0 | $0 | $0 | $0 | $170,644 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subtotal | $334,489 | $788,685 | $32,366 | $105,235 | $205,798 | $154,985 | $173,866 | $100,014 | $26,744 | $151,186 | $152,329 |
| **Professional Fees** | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | |
| Accountants | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | |
| Sub-Total All Professional Fees  6.) | | | $50,000 | | | | | $50,000 | | | $50,000 |
| US Trustee - Quarterly Fees | | | | $4,875 | | | | | | | |
| Subtotal | $0 | $0 | $50,000 | $4,875 | $0 | $0 | $50,000 | $0 | $0 | $0 | $50,000 |
| **Total Disbursements** | $334,489 | $788,685 | $82,366 | $110,110 | $205,798 | $154,985 | $223,866 | $100,014 | $26,744 | $151,186 | $202,329 |
| **Cash Surplus/(Deficit)** | -$207,494 | -$691,528 | $86,395 | $5,629 | -$98,126 | -$47,313 | -$116,194 | $24,215 | $90,517 | -$33,925 | -$85,068 |
| **Ending Cash Balance** | $2,354,395 | $1,662,867 | $1,749,262 | $1,754,891 | $1,656,766 | $1,609,452 | $1,493,259 | $1,517,473 | $1,607,990 | $1,574,065 | $1,488,996 |

36 West 38th Street Holding, LLC
26 Week Budget

**26 Weeks Cash Flow - 36 West 38th Street LLC**

| For Week Ending | Week 1 Budget Sept 1 - Sept 7 | Week 2 Budget Sept 8 - Sept 14 | Week 3 Budget Sept 15 - Sept 21 | Week 4 Budget Sept 22 - Sept 28 | Week 5 Budget Sept 29 - Oct 5 | Week 6 Budget Oct 6 - Oct 12 | Week 7 Budget Oct 13 - Oct 19 | Week 8 Budget Oct 20 - Oct 26 | Week 9 Budget Oct 27 - Nov 2 | Week 10 Budget Nov 3 - Nov 9 | Week 11 Budget Nov 10 - Nov 16 | Week 12 Budget Nov 17 - Nov 23 | Week 13 Budget Nov 24 - Nov 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance (Book)** | | | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | $157,493 | | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | | | |
| Revenue from Sales | | | | | | | | | | | | | |
| Other Revenues | | | | | | | | | | | | | |
| Lender Construction Draw | | | | | | | | | | | | | |
| **Total Receipts to Debtors** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other | | | | | | | | | | | | | |
| **Total Cash Inflow** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Cash Disbursements:** | | | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | | | |
| Payroll / Inside Compensation | | | | | | | | | | | | | |
| Payroll Taxes, Medicare | | | | | | | | | | | | | |
| Employee Medical Benefits | | | | | | | | | | | | | |
| COGS | | | | | | | | | | | | | |
| Overhead | | | | | | | | | | | | | |
| Insurance | $1,500 | | | | $1,500 | | | | $1,500 | | | | $1,500 |
| Taxes | | | | | | | | | | | | | |
| Site Maintenance | | | | | $15,689 | | | | $12,874 | | | | $5,874 |
| Subtotal | $1,500 | $0 | $0 | $0 | $17,189 | $0 | $0 | $0 | $14,374 | $0 | $0 | $0 | $7,374 |
| **Professional Fees** | | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | | | |
| Accountants | | | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | | | |
| Sub-Total All Professional Fees | $0 | | | | $0 | | | | $0 | | | | $0 |
| US Trustee - Quarterly Fees | | | | | | | | | $650 | | | | |
| Subtotal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $650 | $0 | $0 | $0 | $0 |
| **Total Disbursements** | $1,500 | $0 | $0 | $0 | $17,189 | $0 | $0 | $0 | $15,024 | $0 | $0 | $0 | $7,374 |
| **Cash Surplus/(Deficit)** | -$1,500 | $0 | $0 | $0 | -$17,189 | $0 | $0 | $0 | -$15,024 | $0 | $0 | $0 | -$7,374 |
| **Ending Cash Balance** | $155,993 | $155,993 | $155,993 | $155,993 | $138,804 | $138,804 | $138,804 | $138,804 | $123,780 | $123,780 | $123,780 | $123,780 | $116,406 |

**26 Weeks Cash Flow - 36 West 38th Street LLC**

| For Week Ending | Week 14 Budget Dec 1 - Dec 7 | Week 15 Budget Dec 8 - Dec 14 | Week 16 Budget Dec 15 - Dec 21 | Week 17 Budget Dec 22 - Dec 28 | Week 18 Budget Dec 29 - Jan 4 | Week 19 Budget Jan 5 - Jan 11 | Week 20 Budget Jan 12 - Jan 18 | Week 21 Budget Jan 19 - Jan 25 | Week 22 Budget Jan 26 - Feb 1 | Week 23 Budget Feb 2 - Feb 8 | Week 24 Budget Feb 9 - Feb 15 | Week 25 Budget Feb 16 - Feb 22 | Week 26 Budget Feb 23 - Mar 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance (Book)** | | | | | | | | | | | | | |
| Cash Transfer from Pre-Petition Accounts | | | | | | | | | | | | | |
| **Cash Receipts to Debtors:** | | | | | | | | | | | | | |
| Revenue from Sales | | | | | | | | | | | | | |
| Other Revenues | | | | | | | | | | | | | |
| Lender Construction Draw | | | | | | | | | | | | | |
| **Total Receipts to Debtors** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other | | | | | | | | | | | | | |
| **Total Cash Inflow** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Cash Disbursements:** | | | | | | | | | | | | | |
| **Selling, General & Administrative:** | | | | | | | | | | | | | |
| Payroll / Inside Compensation | | | | | | | | | | | | | |
| Payroll Taxes, Medicare | | | | | | | | | | | | | |
| Employee Medical Benefits | | | | | | | | | | | | | |
| COGS | | | | | | | | | | | | | |
| Overhead | | | | | | | | | | | | | |
| Insurance | | | | $1,500 | | | | $1,500 | | | | $1,500 | |
| Taxes | | | | | $69,177 | | | | | | | | |
| Site Maintenance | | | | $6,274 | | | | $4,774 | | | | $6,974 | |
| Subtotal | $0 | $0 | $0 | $7,774 | $69,177 | $0 | $0 | $6,274 | $0 | $0 | $0 | $8,474 | $0 |
| **Professional Fees** | | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | | |
| Litigation Counsel | | | | | | | | | | | | | |
| Corporate Counsel | | | | | | | | | | | | | |
| Accountants | | | | | | | | | | | | | |
| Valuation Expert | | | | | | | | | | | | | |
| OCC Counsel | | | | | | | | | | | | | |
| Sub-Total All Professional Fees | | | | $0 | | | | $0 | | | | $0 | |
| US Trustee - Quarterly Fees | | | | | | | | | $650 | | | | |
| Subtotal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $650 | $0 | $0 | $0 | $0 |
| **Total Disbursements** | $0 | $0 | $0 | $7,774 | $69,177 | $0 | $0 | $6,274 | $650 | $0 | $0 | $8,474 | $0 |
| **Cash Surplus/(Deficit)** | $0 | $0 | $0 | -$7,774 | -$69,177 | $0 | $0 | -$6,274 | -$650 | $0 | $0 | -$8,474 | $0 |
| **Ending Cash Balance** | $116,406 | $116,406 | $116,406 | $108,632 | $39,455 | $39,455 | $39,455 | $33,181 | $32,531 | $32,531 | $32,531 | $24,057 | $24,057 |